[No. 35498.  *En Banc.*  October 27, 1960.]

THE STATE OF WASHINGTON, *on the Relation of John J. Lally, Appellant*, v. ELLSWORTH GUMP, JR., *Respondent.*[1]

[1]Reported in 356 P. (2d) 289.

*John J. Lally* and *Thomas S. Foley*, for appellant.

*Graves, Kizer & Gaiser* (*William J. Powell*, of counsel), for respondent.

RoSELLINI, J.—We are asked to rule upon the constitutionality of RCW 9.68.010, as amended by Laws of 1959, chapter 260, p. 1213, which provides in part:

"Every person who—

"(1) Shall sell or distribute or offer to sell or distribute or has in his possession with intent to sell or distribute any book, magazine, pamphlet, comic book, newspaper, phonograph record, magnetic tape, electric or mechanical transcription picture, drawing, photograph, figure, image or any written or printed matter of an indecent character, which is obscene, lewd, lascivious, filthy or indecent, or which contains an article or instrument of indecent use or purports to be for indecent use or purpose;  . . .

"Shall be guilty of a gross misdemeanor."

The defendants (Spokane county consolidated cause Nos. 36482 and 41596), operators of a drug and a beverage store, were charged in justice court with the offense of selling indecent magazines, as that offense is defined by this statute. The cases were dismissed on the ground that the statute violated the fourteenth amendment to the constitution of the United States, which makes the guarantees of the first amendment applicable to state action. On petition of the prosecuting attorney, the Superior Court for Spokane County granted a writ of review. After a hearing and argument, the court affirmed the order of the respondent justice.

There is no dispute that the decision in this case rests upon the applicability of *Smith v. California*, 361 U. S. 147, 4 L. Ed. (2d) 205, 80 S. Ct. 215, which was decided by the United States Supreme Court on December 14, 1959. In that case a Los Angeles ordinance, making it unlawful for any person to have in his possession any obscene or in-

decent writing or book in any place of business where books were sold or kept for sale, was declared invalid because it prescribed a criminal penalty for such possession irrespective of whether the defendant was aware of the contents of the writing.

The appellant refers to a number of our cases in which it has been held that in the exercise of the police power, the legislature may declare an act a crime, even though *it is done unintentionally and with no guilty knowledge*, if the public interest requires it. However, the appellant admits that those cases have no application if the Washington statute comes within the purview of the supreme court decision in the *Smith* case. The same argument was made before the court in that case. In answering it, that court said:

"California here imposed a strict or absolute criminal responsibility on appellant not to have obscene books in his shop. 'The existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' *Dennis v. United States*, 341 U. S. 494, 500. Still, it is doubtless competent for the States to create strict criminal liabilities by defining criminal offenses without any element of scienter—though even where no freedom-of-expression question is involved, there is precedent in this Court that this power is not without limitations. See *Lambert v. California*, 355 U. S. 225. But the question here is as to the validity of this ordinance's elimination of the scienter requirement—an elimination which may tend to work a substantial restriction on the freedom of speech. . . .

" . . . We have held that obscene speech and writings are not protected by the constitutional guarantees of freedom of speech and the press. *Roth v. United States*, 354 U. S. 476. The ordinance here in question, to be sure, only imposes criminal sanctions on a bookseller if in fact there is to be found in his shop an obscene book. But our holding in *Roth* does not recognize any state power to restrict the dissemination of books which are not obscene; and we think this ordinance's strict liability feature would tend seriously to have that effect, by penalizing booksellers, even though they had not the slightest notice of the character of the books they sold. The appellee and the court below analogize this strict liability penal ordinance to familiar forms of penal statutes which dispense with any element of knowledge on the part of the person charged, food and drug legis-

lation being a principal example. We find the analogy instructive in our examination of the question before us. The usual rationale for such statutes is that the public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors—in fact an absolute standard which will not hear the distributor's plea as to the amount of care he has used. Cf. *United States v. Balint,* 258 U. S. 250, 252-253, 254. His ignorance of the character of the food is irrelevant. There is no specific constitutional inhibition against making the distributors of food the strictest censors of their merchandise, but the constitutional guarantees of the freedom of speech and of the press stand in the way of imposing a similar requirement on the bookseller. By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. . . . The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly. The bookseller's self-censorship, compelled by the State, would be a censorship affecting the whole public, hardly less virulent for being privately administered. Through it, the distribution of all books, both obscene and not obscene, would be impeded."

It is undeniable that the objectionable characteristic of the Los Angeles ordinance held unconstitutional in that case is patent in the statute which we have before us. The booksellers and magazine sellers are held liable regardless of guilty knowledge. The appellant readily admits that this is true, but argues that the statute is nevertheless distinguishable for two reasons.

The first distinction which the appellant seeks to make is that the Los Angeles ordinance made mere possession punishable, while our statute requires sale or possession with the intent to sell. This ignores the reason given by the

Supreme Court for its holding. That court was not concerned with any self-imposed censorship resulting from the punishment of mere possession. Rather it was concerned that a bookseller would be reluctant to sell his wares without first having ascertained their contents and would thus restrict the public access to constitutionally-protected publications. While the Los Angeles ordinance does not refer to sale or the intent to sell, it defines the crime as possession of obscene or indecent writings in a place where books (or other designated writings) are kept for sale. It was obvious, therefore, that its intent was to reach the seller, and not the mere possessor of published material. The recognition of this intent is implicit in the supreme court opinion.

The only other ground on which the appellant attempts to distinguish the *Smith* case is that the defendant in that case was a bookseller, whereas the defendants here sell magazines—his contention being that it would be easier for the defendants in this case to read the magazines which they sell, or to have knowledge of their contents from the covers, than it would be for a bookseller to apprise himself of the nature and contents of the books he sells. That may be the case, and it might be relevant in determining whether the defendants had knowledge of the contents of the publications which they sold, but it is immaterial under the statute, since such knowledge is not an element of the crime.

We hold that RCW 9.68.010, as amended by Laws of 1959, chapter 260, § 1, p. 1213, tends to restrict the freedom of expression protected by the fourteenth amendment to the United States Constitution and is therefore void.

The judgment is affirmed.

WEAVER, C. J., MALLERY, FINLEY, OTT, FOSTER, and HUNTER, JJ., concur.

HILL, J. (concurring specially)—I cannot agree with the majority that RCW 9.68.010, as amended by the Laws of 1959, chapter 260, § 1, p. 1213, tends to unjustifiably restrict the freedom of expression protected by the fourteenth amendment to the United States Constitution; I concur in

the result solely because the Supreme Court of the United States says it does.

DONWORTH, J. concurs with HILL, J.

FINLEY, J. (concurring)—I have signed the majority opinion because I agree that the legislation here involved is proscribed by the decision of the United States Supreme Court in *Smith v. California* (1959), 361 U. S. 147, 4 L. Ed. (2d) 205, 80 S. Ct. 215. Nevertheless, I am prompted to add the following comments.

On more than one occasion our state legislature has attempted to prevent distribution of obscene, salacious, pornographic material in the state of Washington. The most recent legislative effort has now encountered a constitutional obstacle. One, if not the most significant, legislative purpose involved in the particular enactment was to prevent exposure of youngsters and teen-agers to salacious, pornographic material. This, of course, was based upon the premise that exposure of young people to such material is not in their best interests, and is not conducive to an unquestionably highly desirable social objective; namely, their development as good citizens and sound, upright, moral members of the community in which they live.

There is, of course, contrariety of opinion as to what constitutes obscenity and perhaps pornography. Further, there is some difference of opinion as to whether exposure to pornographic material produces socially undesirable results in terms of an individual's moral habits and development. However, authorities of considerable standing support the premise, followed by the legislature, that there is a reasonable relationship between (a) the development of good moral habits and sound sex attitudes in the young and (b) their exposure to salacious, pornographic material.

The oft repeated allusion of Justice Holmes to a person shouting fire in a crowded theatre suggests that freedom of speech in a true or realistic constitutional sense may well be subject to some eminently reasonable restrictions; and further, that these may be ascertainable legislatively, as well as finally determinable judicially. This tempts some specula-

tion or further evaluation as to any prospective legislative action relating to the exposure of young people to pornographic material.

The statute involved in the present case was broad in scope and, in one very real sense, was all inclusive. It attempted to prevent the distribution of suspect material, not only to young people, but to all persons, irrespective of age and marital status. Also, since *scienter*, or knowledge of obscenity, was not a factor in the operation of the statute, it conceivably placed a too burdensome task upon dealers to read and examine their wares for obscenity before selling them; or, alternatively, to face the possibility of unwittingly violating the law.

If the statute in the instant case had been pin-pointed at the sale of the offensive material to young people (possibly those unmarried and under a stated age), unquestionably, its scope would have been dramatically reduced. It would not have encompassed adults, and as a very practical matter its operation would have been confined to young individuals. Furthermore, it would have provided a practicable means for run-of-the-mill dealers to avoid violation of the law simply by ascertaining the age or marital status of their customers. Such a pin-pointing by the statute at a specific problem or evil—sale of suspect material to young people— might possibly have provided a reasonably acceptable basis for constitutional distinction less inimical to the legislative purpose which I believe laudably prompted enactment of RCW 9.68.010.