[No. 858-2.    Division Two.    July 26, 1973.]

THE CITY OF TACOMA, *Respondent*, v. JIM LEWIS, *Appellant*.

*Gary G. Weber* and *George W. Dixon,* for appellant.

*Robert R. Hamilton, City Attorney, F. H. Chapin, Jr.,* and *William J. Barker, Assistants,* for respondent.

PETRIE, J.—The defendant, Jim Lewis, is the owner-manager of an adult cinema house in Tacoma, Washington, which displays "X" rated films only. On August 18, 1971, and on the 5 days immediately preceding, he exhibited the film "Naked Nympho." In the audience on August 18 were two officers of the Tacoma Police Department. After viewing the film, they talked briefly to the defendant and learned that he had knowledge of the film's content. The defendant was charged, tried and convicted of violation of a municipal obscenity ordinance.

The defendant's assignments of error on his appeal to the court raise three issues: (1) whether or not the exhibition of the film was an act protected from prosecution under the "freedom of speech" clause of the first amendment to the United States Constitution; (2) whether or not the ordinance under which he was prosecuted was void by reason of its failure to include scienter as an element of the crime; and (3) whether or not there was sufficient factual evidence to support the conviction.

In a series of five opinions[1] filed on June 21, 1973, the United States Supreme Court has spoken definitively on

---

[1] *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973); *United States v. Orito,* 413 U.S. 139, 37 L. Ed. 2d 513, 93 S. Ct. 2674 (1973); *Kaplan v. California,* 413 U.S. 115, 37 L. Ed. 2d 492, 93 S. Ct. 2680 (1973); *United States v. 12 200-Ft. Reels,* 413 U.S. 123, 37 L. Ed. 2d 500, 93 S. Ct. 2665 (1973).

several aspects of the topic, which it calls "obscenity-pornography." The court reaffirmed a prior pronouncement that "obscenity is not within the area of constitutionally protected speech or press." *Miller v. California*, 413 U.S. 15, 21, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973); *Roth v. United States*, 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957). More importantly, a majority of the court, for the first time since *Roth*, undertook "to formulate standards more concrete than those in the past, . . ." *Miller v. California, supra* at 20.

Recognizing that in the area of free speech and press there are "few eternal verities," and acknowledging its responsibility to "always remain sensitive to any infringement on genuinely serious literary, artistic, political, or scientific expression" the *Miller* court determined that police power enactments purporting to regulate "obscenity-pornography" must be confined to works which depict or describe sexual conduct. A state offense must specifically define the proscribed conduct and must be

limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

*Miller v. California, supra* at 24.

■ The court-enunciated basic guidelines for the trier of fact are: (a) whether or not the average person, applying contemporary community standards, would find the work, taken as a whole, appeals to the prurient interest; (b) whether or not the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law; and (c) whether or not the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. Specifically *rejected* as a constitutional standard was a previously announced requirement that the work must be *"utterly"* without redeeming social value." *Miller v. California, supra* at 24; *see Memoirs v. Massachusetts*, 383 U.S. 413, 16 L. Ed. 2d 1, 86 S. Ct. 975 (1966),

where a plurality of the court had injected that requirement.

Further, in explanation of what it meant by guideline (b), the court gave as "a few plain examples of what a state statute could define for regulation . . .", the following:

·(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

*Miller v. California, supra* at 25.

Applying these reformulated standards and guidelines to the case at bench, we have no hesitancy whatsoever in categorizing the film "Naked Nympho" as "obscenity-pornography" not protected by the first and fourteenth amendments to the United States Constitution. It would serve no useful purpose to describe the film in any nauseating detail. Suffice it to say that the film, in its entirety, fits precisely the examples which the United States Supreme Court has set forth as "hard-core" pornography, the distribution or public exhibition of which, the several states may prohibit.

The second issue presented by this appeal requires an examination and interpretation of the ordinance which Mr. Lewis is charged with having violated. The defendant contends that the ordinance, upon which the conviction is based, is constitutionally defective on its face because it fails to specify the need for some degree of scienter upon the part of the person whose conviction is sought. Section 8.32.020 of the Official Code of the City of Tacoma provides, in part, as follows:

It is unlawful for any person, firm or corporation to publicly show or exhibit any picture or motion picture . . . that is . . . obscene . . .

It has long been established that an ordinance which, *as authoritatively interpreted,* creates a criminal offense of possession of obscene material without requiring scienter as an element of the crime, is invalid as a matter of federal

constitutional law.[2] *Smith v. California,* 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215 (1959). The defendant contends that it has already been established authoritatively in this state that a statute, which defines the crime of distribution of obscene magazines without specifying on its face the element of scienter, is subject to the rule announced in *Smith v. California, supra.* For that proposition, he directs our attention to *State ex rel. Lally v. Gump,* 57 Wn.2d 224, 356 P.2d 289 (1960). We do not view the opinion in *Gump* as necessarily decisive of the precise issue before us on this appeal. *See,* however, Annot., 5 A.L.R.3d 1214, 1223 (1966) for an expression to the contrary. In *Gump,* the defendants had also challenged the validity of an obscenity statute. They contended the statute held them "liable regardless of guilty knowledge", and the prosecution readily admitted that that was the intent of the statute. The court, therefore, had no choice except to apply the rule of law enunciated in *Smith.* The only *decision* in the *Gump* case was that the *Smith* rule of law applied to a *sale* of an obscene *magazine* in *Gump* to the same extent as a *possession* of an obscene *book* had applied in *Smith.*

▮ In the case at bench, it should be noted, the prosecution has always contended that it must establish the element of scienter, and has never contended that the language of the ordinance relieves the prosecution of any such requirement. Indeed, in the case at bench, the criminal complaint against Mr. Lewis charges that he "did wilfully and unlawfully show a motion picture that is obscene." In this jurisdiction, the term "wilfully" implies on the part of the wrongdoer, knowledge and a purpose to do the wrongful act. *State v. Travis,* 1 Wn. App. 971, 465 P.2d 209 (1970); *State v. Bixby,* 27 Wn.2d 144, 177 P.2d 689 (1947). Contrary to contending that the ordinance relieves it of

[2]We note, incidentally, that the United States Supreme Court recently declined an invitation to consider the constitutionality of 18 U.S.C. § 1462, that statute which, *inter alia,* declares it a criminal offense for anyone "Whoever brings into the United States, . . . any obscene, . . . motion-picture film, . . ." *United States v. Orito,* 413 U.S. 139, 140 n.1, 2, 37 L. Ed. 2d 513, 93 S. Ct. 2674 (1973).

proving scienter, the prosecution contends that proof of scienter is *inherently included* within the elements of the crime. We agree.

█ At common law, scienter was an element of every crime. When the common law was codified into the criminal statute, there was a modification of the common-law rule relative to the element of intent; namely, in those criminal offenses regarded as acts mala prohibita, scienter is not an element, while in those offenses designated as acts mala in se, intent is an element. *Seattle v. Gordon,* 54 Wn.2d 516, 342 P.2d 604 (1959). Unless the statute expressly eliminates the element of intent or design or defines the kinds of offenses which, by their very nature, are classified judicially as mala prohibita, the ingredients of intent, design and purpose should be deemed indispensable to a proof of guilt. *State v. Thrift,* 4 Wn. App. 192, 480 P.2d 222 (1971); *State v. Turner,* 78 Wn.2d 276, 474 P.2d 91, 41 A.L.R.3d 493 (1970).

The defendant asserts, in his brief, that *Smith v. California, supra,* at the very least holds "obscenity had to be a crime mala in se and could not be one mala prohibita." In a footnote to *Smith,* at page 163, the court did observe:

> The publication of obscene printed matter was clearly established as a common-law offense in England in 1727 . . . The common-law liability was carried across the Atlantic before the United States was established and appears early in the States.

(Citations omitted.)

█ The ordinance of the City of Tacoma which provides the basis for the conviction in the case at bench did not expressly eliminate the element of intent; neither did it define a crime classified judicially as malum prohibitum. Accordingly, it did not dispense with the necessity to establish some degree of scienter as a prerequisite to a finding of guilty. Therefore, the rule of law established by *Smith v. California, supra,* does not apply to the ordinance in this case. The ordinance does require, and the prosecution must establish, that the defendant willfully exhibited the ob-

scene film. He was so charged, and the trial court found him guilty of that charge.

We turn, then, to the defendant's third and final contention—that the evidence is insufficient to support a finding of guilt. We note, preliminarily, that section 8.32.010 of the Official Code of the City of Tacoma sets forth the essential definition as follows:

"Obscene material" means material that (1) has a dominant theme which, taken as a whole, appeals to the prurient interest in sex, (2) is patently offensive because it affronts contemporary community standards relating to description or representation of sexual matters, and (3) is utterly without redeeming social value.

It is apparent, therefore, that the ordinance is more permissive than the constitutional fact requirement now necessary to identify "obscenity-pornography" under the newly reformulated constitutional standards. The ordinance requires, and therefore the proof in this case requires, that the material be *utterly* without redeeming social value."

We should recognize at this point, also, that we shift our analysis away from the judicial function of ascertaining whether or not a constitutional fact exists, and enter into that area which is assigned to the trier of fact—whether or not the accused has, in fact, violated the statute. The distinction is not always understood. The purely judicial function is to ascertain whether or not the material is obscene in the sense that it is not constitutionally protected, *i.e.*, whether or not the constitutional limitations on the governing body's power have been exceeded in a given fact situation. Having ascertained that the limitations upon the governing body have not been exceeded, it then becomes the responsibility of the trier of fact to ascertain whether or not in fact the defendant has violated the statute or ordinance.

In the case at bench, the defendant's assignment of error limits the area of our search. He challenges the expressions of opinion of the city's expert witnesses because "the cumulative tenor of their testimony revealed that the

testimony was not that of the community but what they personally felt the community standard[3] should be." We have reviewed the record and do not find any substantiation of the defendant's contention—at least with regard to the testimony of the editor of the arts and entertainment section of the daily newspaper printed in Tacoma, and with regard to testimony of the gynecologist who has practiced medicine in Tacoma in excess of 25 years.

██ Finally, we note that the trial court, as the trier of fact, could well have reached the finding of guilt without the necessity of any expert testimony whatsoever. "The films, obviously, are the best evidence of what they represent." (Footnote omitted.) *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 56, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973). In a footnote to *Slaton,* the court declared at page 56:

> This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. . . . No such assistance is needed by jurors in obscenity cases; indeed the "expert witness" practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony. . . . We reserve judgment, however, on the extreme case, not presented here, where contested materials are directed at such a bizarre deviant group that the experience of the trier-of-fact would be plainly inadequate to judge whether the material appeals to the prurient interest.

(Citations omitted.)

We find there was substantial evidence to support the trial court's determination of guilt.

Judgment affirmed.

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied September 10, 1973.

---

[3]The defendant does not raise the controversial issue of a "national" standard vs. a "community" standard. The matter was subsequently resolved in favor of a "community" standard in *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973).