[No. 213-40781-1.    Division One.    February 24, 1970.]
Panel 1

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES W. TRAVIS, *Appellant.*

*Cushman, Thomas & Holt* and *R. M. Holt,* for appellant.

*Charles O. Carroll, Prosecuting Attorney,* and *Patricia G. Harber, Deputy,* for respondent.

JAMES, C. J.—Charles W. Travis was charged with negligent driving[1] and resisting arrest.[2] He was found guilty of

---

[1] RCW 46.61.525: "It shall be unlawful for any person to operate a motor vehicle in a negligent manner over and along the public highways of this state. For the purpose of this section to 'operate in a negligent manner' shall be construed to mean the operation of a vehicle upon the public highways of this state in such a manner as to endanger or be likely to endanger any persons or property.

"The offense of operating a vehicle in a negligent manner shall be considered to be a lesser offense than, but included in, the offense of operating a vehicle in a reckless manner, and any person charged with operating a vehicle in a reckless manner may be convicted of the lesser offense of operating a vehicle in a negligent manner. Any person violating the provisions of this section will be guilty of a misdemeanor: *Provided,* That the director shall not revoke any license under this section."

[2] RCW 9.69.040: "Every person who, in any case or under any

resisting arrest but acquitted of the negligent driving charge.

The evidence would permit the jury to find that the following occurred:

Travis was driving his car in an easterly direction on the Lake Washington Floating Bridge. When he reached the point at which the roadway curves around the drawspan, he lost control of his car. As the car emerged from the drawspan section, it went into a skid, spun around once, skidded along the bridge, and struck the curb on the north side of the roadway. There it stopped momentarily and then lurched forward, went into a double spin, crossed four lanes and struck the curb on the south side of the roadway, and finally stopped.

Two King County sheriff's deputies who were approaching the drawspan from the east observed this startling performance. Both officers stopped their patrol cars, and one of them, Captain Pingrey, went immediately on foot to Travis' car. When asked of his condition, Travis responded that he was not hurt. Pingrey noticed a moderate odor of alcohol while talking to Travis, and he asked Travis if he had been drinking. The answer was, "Yeah, I had four beers in town."

Pingrey then instructed Travis to drive his car off the bridge and park it on the exit road at the old toll plaza. The second officer, Engstrom, who had been directing traffic, followed Travis. Engstrom parked his car immediately behind Travis' car. Upon request, Travis left his car and sat with Engstrom in the front seat of his patrol car. There followed a general discussion of the circumstances of the accident, during which Engstrom noticed that Travis' speech was slurred and that Travis smelled of alcohol. When asked if he had been drinking, Travis replied that he had had four beers on an empty stomach.

In a few minutes Trooper LaDoux of the Washington

circumstances not otherwise specially provided for, shall wilfully resist, delay or obstruct a public officer in discharging or attempting to discharge any legal duty of his office, shall be guilty of a misdemeanor.".

State Patrol arrived and parked his car in front of Travis' car. Trooper LaDoux noticed that the right front fender of Travis' car was damaged. He got into the back seat of Engstrom's patrol car and joined in the discussion. He noticed a moderate odor of intoxicants.

Engstrom then left to examine the damage to Travis' car. When he returned, one of the officers said that the car could not be driven safely and suggested that Travis telephone someone, perhaps his wife, to arrange transportation. LaDoux also told Travis that it was snowing in the Issaquah-North Bend area (Travis' destination), making driving hazardous.

At this juncture, Travis' cooperative attitude changed abruptly. He first refused to make a telephone call. He then said he had no change. Officer Engstrom offered to stake him a dime. Travis argued with Trooper LaDoux, asserting that he did not believe it was snowing at his home in North Bend.

A telephone booth was in plain view close to the trooper's car. Finally, Travis reached into his pocket and said that he had change and would make a telephone call. He left the patrol car, ostensibly for the telephone booth, but went instead to his car, started the engine, and attempted to maneuver his car from between the two police cars. LaDoux exclaimed, "There he goes!" and Engstrom immediately moved his car forward to prevent Travis from leaving. Engstrom then went to Travis' car, reached through the open window by the driver's seat, and took the key from the ignition switch. Engstrom then told Travis that he was going to take him to the King County jail. Travis, using profanity, asserted that he was not going to be taken anyplace. As he emerged from his car, he said that he was going to fight and would chop or cut Engstrom down. Engstrom, observing Travis' clenched right fist, and believing that Travis was about to strike him, sprayed Travis with mace. After a struggle, and with assistance from Trooper LaDoux, Engstrom succeeded in placing handcuffs upon Travis.

Travis first assigns error to "allowing the jury to consider defendant's statement that he had consumed four beers as an admission."

Travis had originally been charged in the Mercer Island District Justice Court with driving while under the influence of alcohol, being drunk in public, and resisting arrest. The drunk driving charge was amended to charge reckless driving. The district court judge dismissed the drunk in public charge but found Travis guilty of negligent driving and resisting arrest.

Anticipating the officers' testimony in superior court, Travis moved to exclude any reference to drinking. After a preliminary hearing pursuant to CrR 101.20W, the trial judge concluded that the statements concerning drinking were given voluntarily and were not elicited during an in-custody interrogation. See *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Travis' argument is that evidence of his drinking was not relevant either to the charge of negligent driving or to the charge of resisting arrest and that the state's only purpose in introducing the evidence was to prejudice his case before the jury.

In a prosecution for reckless driving, the state may show that the defendant had been drinking before he was apprehended. *State v. Birch,* 183 Wash. 670, 49 P.2d 921 (1935). And negligent driving is an included offense in a charge of reckless driving. RCW 46.61.525. Whether Travis' use of intoxicants influenced his driving was an issue for the jury to resolve. The trial judge did not err in permitting the jury to consider Travis' statements that he had drunk four beers.

One of the burdens placed upon the state by the "to convict" instruction was that the jury had to be persuaded beyond a reasonable doubt "[t]hat on or about the 10th day of April, 1968, the defendant Charles W. Travis willfully resisted being placed under arrest." Travis contends that the jury should have been required to find not only that

Travis willfully resisted arrest but that he did so *knowingly* as well.

■ The judge instructed the jury that " 'willfully' means intentionally and purposely and not accidentally." A complete answer to Travis' contention is found in the following quotation from *State v. Bixby,* 27 Wn.2d 144, 160, 177 P.2d 689 (1947):

> " 'Willfully,' is equivalent to 'knowingly.' 'Willfully,' as used when saying that an act was willfully done, implies that the act was done by design; done for a set purpose; and it would follow that it was knowingly done. The term 'willfully' implies that the act is done knowingly. The word 'willfully' implies, on the part of the wrongdoer, knowledge, and a purpose to do the wrongful act. 'Willfully,' as used in connection with an act forbidden by law, means that the act must be done knowingly or intentionally, and that the act was committed with knowledge, and that the will consented to, designed, and directed the act. In common parlance, 'willfully' is used in the sense of 'knowingly,' as distinguished from 'accidental' or 'involuntarily.' *Hutchman v. State,* Okl. Cr. App., 66 P.2d 99, 102." 45 Words and Phrases 218.

We have considered Travis' remaining assignments of error and find them all to be without merit.

The judgment is affirmed.

FARRIS and SWANSON, JJ., concur.

———————

Petition for rehearing denied March 30, 1970.