[No. 1973–3. Division Three. July 18, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. KIM V. FATELEY, *Appellant.*

*Bruce Erickson* of *Okanogan–Ferry County Public Defender*, for appellant.

*Jeremiah McCormick, Prosecuting Attorney*, and *Melanie Oettel, Deputy*, for respondent.

McINTURFF, J.—The defendant Kim V. Fateley[1] appeals from the judgment following his conviction of negligent homicide in a jury trial.

Mr. Fateley was charged under RCW 46.61.520[2] with causing the death of Gregory Riley by failing to negotiate a curve and driving a motorcycle over an embankment. There were no witnesses to the mishap.

The death occurred in August 1975 during the Omak Stampede. It was hot and dry, and after work the defendant and the deceased, a close friend, began drinking beer about 7:30 p.m. The defendant said he had possibly four beers before he stopped drinking about 10 p.m. The defendant, his girl friend, and the deceased, along with other youths met that evening at a lookout point on Dalton Road. Near midnight he started down the road on his

---

[1] The information is filed against "Kim V. Fateley," but the verdict was returned against "Kim Fately." Since both parties on appeal identify the defendant as "Kim V. Fateley," we do likewise.

[2] RCW 46.61.520 states:

"Negligent homicide by motor vehicle—Penalty. (1) When the death of any person shall ensue within three years as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or drugs, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle."

motorcycle with the deceased as his passenger. He remembered his rear wheel slipping, but he could not recall much more. Physical evidence indicated the defendant failed to negotiate a turn near the lookout point, his motorcycle went off the embankment and his passenger was killed. Neither his girl friend nor any other witness who saw him before the accident felt he was under the influence of intoxicants or driving irregularly.

A woman living near the lookout point testified that after midnight, while she was reading in bed, she heard a motorcycle drive by. She said the noise stopped abruptly, and she and her daughter went to investigate. There was a tire track leading over the edge of the road. Upon helping the defendant up the embankment she concluded he was influenced by something but she did not smell intoxicants on him.

Upon arriving at the scene, two state troopers smelled intoxicants on the defendant. He appeared disoriented and glassy–eyed. He was unable to satisfactorily perform field sobriety tests, and about 2 1/2 hours after the accident the Breathalyzer indicated .10 percent blood alcohol by weight.

The investigating officer testified that the road was paved, clear of gravel and dry. There was no marked center line and the shoulders of the road were of packed gravel. He said he saw no reason why the vehicle had left the road. The other officer testified there were no skid marks and that it would have been necessary for the motorcycle to have crossed the oncoming lane of traffic in order to have gone off the embankment. The lone tire track was identified as having been made by a motorcycle.

Defendant raises seven assignments of error, five of which concern the sufficiency of the evidence to support the State's allegations that he drove in a reckless manner or with disregard for the safety of others. He also complains of the trial court's failure to include the word "feloniously" in an instruction which set forth the contents of the information filed against him. And, he contends that he was denied his right to effective assistance of counsel when the trial

court sustained the State's objections to defense counsel's closing argument.

# I
## SUFFICIENCY OF EVIDENCE

The thrust of defendant's arguments as to the sufficiency of evidence is that the State failed to introduce substantial evidence of reckless driving or driving with disregard for the safety of others. His theory on appeal is that when more than one method of committing a crime is charged and there is insufficient evidence regarding one of the methods, the conviction must be set aside unless the record indicates that the verdict is based upon another method on which there is substantial evidence. *State v. Vanderburg,* 14 Wn. App. 738, 544 P.2d 1251 (1976). Thus, unless there is sufficient evidence as to each of the means by which he was alleged to have committed the crime, the verdict must be set aside.

 A challenge to the sufficiency of the evidence admits the truth of the evidence of the party against whom the challenge is made, along with all the inferences that can reasonably be drawn therefrom, and it requires that the evidence be interpreted most strongly against the challenger and in a light most favorable to the opposing party.[3] Although the determination as to the sufficiency of the evidence largely depends upon the facts in each case, *State v. Uglem,* 68 Wn.2d 428, 413 P.2d 643 (1966), a mere scintilla of evidence will not rise to the level of sufficiency in order to support a conviction. *State v. Kirkpatrick,* 14 Wn. App. 212, 540 P.2d 450 (1975). Instead, there must be *substantial evidence, i.e.,* that quantum of evidence necessary to establish circumstances from which the jury could reasonably infer the fact to be proved. "[T]he [trial] court is only

---

[3]*State v. Uglem,* 68 Wn.2d 428, 413 P.2d 643 (1966); *State v. Reynolds,* 51 Wn.2d 830, 322 P.2d 356 (1958); *State v. White,* 16 Wn. App. 315, 556 P.2d 255 (1976).

empowered to determine whether there is 'substantial evidence' tending to establish circumstances on which a necessary element of a crime may be predicated." *State v. Randecker,* 79 Wn.2d 512, 517, 487 P.2d 1295 (1971).

We recognize that more than ordinary negligence must be shown to support a conviction for negligent homicide,[4] and after reviewing the record we conclude there was substantial evidence defendant drove his motorcycle in a reckless manner and with disregard for the safety of others. First, there was more than sufficient evidence of intoxication.[5] Furthermore, the evidence concerning the tire track indicates the defendant drove his motorcycle across the oncoming lane of traffic and off an embankment. And, there was no evidence of any physical irregularity in the road or mechanical defect in the motorcycle which could help explain the accident. In addition, there was evidence that the defendant had been on the road before and that those preceding him down the hill that night did not have any problems driving around the curve in question. Where there is substantial evidence to support a conviction on *each* of the means by which a crime may be committed, there is no error in presenting those means for jury consideration.[6]

Notwithstanding, defendant argues the conviction must nonetheless be reversed because there is a failure of proof of causation. He contends a minimum blood alcohol reading sufficient to create a presumption of intoxication will not be sufficient to support a conviction unless it is shown that the affected driving was the proximate cause of the decedent's death, citing *State v. Engstrom,* 79 Wn.2d 469, 487 P.2d 205 (1971), and *State v. Mearns,* 7 Wn. App. 818, 502 P.2d

---

[4]*State v. Eike,* 72 Wn.2d 760, 435 P.2d 680 (1967); *State v. Partridge,* 47 Wn.2d 640, 289 P.2d 702 (1955).

[5]Such evidence has been considered relevant in proving negligent driving, *State v. Birch,* 183 Wash. 670, 49 P.2d 921 (1935), and in proving reckless driving, *State v. Travis,* 1 Wn. App. 971, 465 P.2d 209 (1970).

[6]*State v. Arndt,* 87 Wn.2d 374, 553 P.2d 1328 (1976).

1228 (1972). The State replies that neither *Engstrom* nor *Mearns* requires a reversal because the jury was properly instructed as to the necessary causation element.

In *Engstrom* the court approved instructions which required the jury, in order to convict the defendant, to find "that the operation of the vehicle in an intoxicated condition must be the proximate cause of the death."[7] And in *Mearns,* the court said at page 826:

> Reading the instructions given, the jury could conclude that the proximate cause referred to was that the cause of the decedent's death was the impact of the car rather than some other cause such as illness or other injury. While this causal connection must be shown, so also must the causal connection between drinking and impact.

In the instant case, the jury was instructed:

> To convict the defendant Kim V. Fateley, of the crime of negligent homicide, the State must prove to you beyond a reasonable doubt:
> 1. That the defendant, Kim V. Fateley, on or about the 9th day of August, 1975, while in Okanogan County did operate a motor vehicle;
> 2. That at the time of the defendant's operation of the motor vehicle one or more of the following was true of the defendant:
>     a. The defendant operated the vehicle in a reckless manner,
>     b. The defendant operated the vehicle with disregard for the safety of others,
>     c. The defendant was under the influence of or affected by intoxicating liquor.
> 3. That the condition or conditions found to be true under two (2) above did proximately cause the defendant to fail to negotiate a curve and drive over an embankment and
> 4. That the death of Gregory Riley did ensue within three years as the proximate result of the injury received in the accident.
>
> . . .
>
> The term "proximate cause" means that cause which in a direct, unbroken sequence produces the death in

---

[7]*State v. Engstrom,* 79 Wn.2d 469, 475, 487 P.2d 205 (1971).

question and without which such death would not have occurred or happened.

Under the instructions given, we are satisfied that the tests of *Engstrom* and *Mearns* have been met. Thus, the jury was properly instructed as to the causation stemming from intoxication.

## II
### ERROR IN INSTRUCTION

Defendant next contends that the trial court erred in failing to include the word "feloniously" in the instruction which set out the information because it failed to alert the jury that the crime charged was a felony and not a misdemeanor. Defendant argues:

> [T]he fact that the jury was not advised specifically that ordinary negligence was not sufficient to sustain a conviction highlights the need for informing the jury that the crime is a felony in nature and emphasizes the error which was created by setting forth the contents of the information against the defendant with the word "feloniously" omitted.

We note, first, that the defendant did not request an instruction distinguishing ordinary negligence from the kind of conduct necessary for a conviction of negligent homicide. Absent such a request, the trial court did not err in failing to so instruct the jury.[8] The question, then, is whether, under the instructions given, the jury was required to find more than ordinary negligence.

The jury was instructed:

> [T]he words "to operate a vehicle in a reckless manner" means the operation of a motor vehicle in a heedless,

---

[8]*State v. Gunderson*, 74 Wn.2d 266, 444 P.2d 156 (1968). We note that in *State v. Eike*, 72 Wn.2d 760, 766, 435 P.2d 680 (1967), the court said:

> [I]t was not error for the court, in instruction No. 6, to instruct that "to operate a motor vehicle with disregard for the safety of others, means just what the words imply." But in the absence of a specific request for such an instruction, the court was not obliged to go beyond the language of the statute and declare that to drive with disregard for the safety of others also means a negligence greater than ordinary negligence. Defendant not having requested such an instruction to that effect, it was not error to omit such an instruction.

careless, or rash manner or in a manner indifferent to consequences.

This instruction comports with that approved in *State v. Partridge,* 47 Wn.2d 640, 289 P.2d 702 (1955). Further, the jury was instructed:

"[T]o operate a motor vehicle with disregard for the safety of others," means just what the words imply.

*Accord, State v. Eike,* 72 Wn.2d 760, 435 P.2d 680 (1967). Thus, the defendant was tried under approved instructions regarding the kind of conduct required for conviction. Under them counsel was able to, and did, argue his theory of the case. There was no error in failing to include the word "feloniously" in the charging instruction.

## III

### Objection to Closing Argument

Finally, the defendant contends that the trial court erred in twice sustaining the prosecutor's objections to defense counsel's closing argument and admonishing the jury to disregard counsel's remarks. The objections came as counsel was discussing two of the court's instructions.[9] The record shows the following argument being made by defense counsel:

---

[9]Instruction No. 2: "This matter is being prosecuted upon an information filed by the Prosecuting Attorney of Okanogan County, Washington, charging the defendant, Kim V. Fateley, with the crime of negligent homicide committed as follows, to-wit:

"That on or about the 9th day of August, 1975, in the County of Okanogan, State of Washington then and there being said defendant did willfully, unlawfully, while then and there operating a motor vehicle, to-wit: 1974 Honda motorcycle and proceeding in an easterly direction upon Dalton Road, a public highway in said County and State and being the discharge of his duties as such driver and operator, then and there did operate such motor vehicle in a reckless manner and/or with a disregard for the safety of others, and/or while under the influence of and affected by the use of intoxicating liquor and, as a direct result of the aforementioned said act or acts, the said Kim V. Fateley while driving said vehicle, did fail to negotiate a curve and went over an embankment, throwing both the driver, Kim V. Fateley, a passenger, Gregory Riley, from said vehicle, thereby mortally injuring the said Gregory Riley from which mortal injuries the said Gregory Riley then and there died."

Now, one of the instructions, the first—well, the first instruction is general. The second one tells you what the information charges. An information is a piece of paper charging a citizen with a crime. In this case the information charges that the ". . . defendant did willfully, unlawfully . . ." commit the crime of negligent homicide. The Judge then goes on to instruct you what the words willfully and unlawfully mean. He states that "to do an act 'willfully' means to do an act intentionally, purposely and not accidentally." Unlawfully means to do an act contrary to law. So we're not talking about the State having to show that an accident occurred, we're talking about you have to be convinced beyond a reasonable doubt that this crime was committed, if a crime was committed, intentionally, purposefully and not accidentally.

MR. TOBISKA: [The State] Objection, Your Honor. I think that misstates—

THE COURT: Yes. The objection is sustained and the comments are stricken, and the jury is instructed to disregard them.

MR. ERICKSON: [Defense] All right. I ask you to look at the instructions. I'm sorry if I mislead you. The Judge defines willfully and intentionally—excuse me, willfully,

---

Instruction No. 3: "The Information is not evidence and cannot be considered by you as such. It is merely the formal charges upon which the defendant must stand trial and can be considered by you for that purpose and that purpose alone.

"The defendant has entered a plea of 'not guilty' to all charges which plea puts in issue every material allegation contained in said Information and the burden is upon the State of proving every fact material and necessary to a conviction upon the offenses charged in the Information beyond a reasonable doubt.

"The State, however, is not required to prove all the material allegations contained in said Information by direct evidence. It may do so in whole or in part by circumstantial evidence.

"Direct evidence is that given by a witness who testifies directly of his own knowledge concerning facts to be proved. Circumstantial evidence consists of proof of facts or circumstances which according to the common experience of mankind give rise to a reasonable inference of the truth of the fact sought to be proved. One kind of evidence is not necessarily more or less valuable than the other.

"The definition of the words as used in these instructions is as follows:

"To do an act 'willfully' means to do an act intentionally, purposely and not accidentally.

"To do an act 'unlawfully' means to do an act contrary to the law and without sanction of the law."

as meaning to do an act intentionally, purposely and not accidentally.

MR. TOBISKA: Objection, Your Honor.

THE COURT: The objection is sustained. The last remark of counsel is stricken. And I don't want counsel to go into it again.

At the close of defense counsel's argument, the jury was retired for a short recess, and the trial court explained its reasons for sustaining the State's objections:

We discussed yesterday that the intent to have the accident, the intent to kill is not an element, that I would not allow it to be argued. Yet you deliberately injected that into your argument trying to mislead the jury to misstating the law. I ruled on it and you tried to go around the back door and do the same, identical thing.

The defendant concedes that intention to effect the death of the deceased is not an element of the crime of negligent homicide, citing *State v. Forler*, 38 Wn.2d 39, 227 P.2d 727 (1951), and he acknowledges that it would be improper for defense counsel to make such an argument. But, he contends he was only attempting to argue that, to find the defendant guilty as charged, the jury must have been convinced beyond a reasonable doubt that the defendant willfully drove his vehicle in an offending manner and thereby caused the death of the decedent. Again, he concedes that the first objection might have properly been sustained because his argument could be considered ambiguous or misleading, but he contends that sustaining the second objection was serious error because at that point he was only quoting from the court's instructions.

We recognize the importance to the defendant to have opportunity to address the jury at the close of trial. "[F]or the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt."[10] But:

---

[10]*Herring v. New York*, 422 U.S. 853, 862, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975).

This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial.

*Herring v. New York,* 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975).[11]

■ From the appearance of the above portion of the record alone it would seem that the trial court erred in sustaining the State's objections to defense counsel's closing argument. That is because in this jurisdiction as in many others, counsel may, in his closing argument, properly read from the court's instructions.[12] In light of the circumstances surrounding the subject instruction, however, we feel the trial court was justified in sustaining the State's objections to counsel's argument.

First, under the instructions, the jury was not required to

---

[11]*But see State v. Mayo,* 42 Wash. 540, 85 P. 251 (1906) (limiting time of argument to 1 1/2 hours per side considered abuse of discretion in capital case involving 4 days of trial, 20 witnesses and 500–page record of evidence).

[12]Our Supreme Court in *State v. Estill,* 80 Wn.2d 196, 199–200, 492 P.2d 1037 (1972) said:

It is the rule in this state that statements by the prosecution or defense to the jury upon the law must be confined to the law as set forth in the instructions of the court. *State v. Ellsworth,* 40 Wn.2d 375, 242 P.2d 1019 (1952); *State v. Brown,* 35 Wn.2d 379, 213 P.2d 305 (1949).

For cases where counsel improperly read from a court decision, *see State v. Shelton,* 71 Wn.2d 838, 431 P.2d 201 (1967); *State v. Brown, supra; State v. Rholeder,* 82 Wash. 618, 144 P. 914 (1914). Cases concerning counsel's right to argue his case, and particularly to refer to the law or read from law books, are collected, respectively, in *Prejudicial Effect of Trial Court's Denial, or Equivalent, of Counsel's Right to Argue Case,* Annot., 38 A.L.R.2d 1396, and *Counsel's Right in Criminal Prosecution to Argue Law or to Read Law Books to the Jury,* 67 A.L.R.2d 245.

find, in order to convict the defendant, that he acted willfully and unlawfully.[13] Nor does the negligent homicide statute[14] or applicable case law[15] require such a finding.

Secondly, the trial court had ruled the day before closing argument that intent was not a necessary element of the crime of negligent homicide. The ruling came in a jury instruction conference during which the court stated that it had not included the word "felonious" in the charging instruction because

the Court felt it was surplusage, and also that counsel for the defense was urging that with that in there he should be able to give a definition of feloniously, which stated criminal intent is a necessary element of the crime of negligent homicide.

Thirdly, defense counsel was not prohibited from arguing his theories of the case. He was later able to (1) challenge the intoxication evidence; (2) urge that the circumstances surrounding the death of the deceased amounted to no more than an accident; (3) attack the lack of investigation on the part of the State Patrol; and (4) urge that the defendant's conduct was the result of the accident and not of intoxicating beverages. Finally, the definitions referred to in counsel's argument were in the instructions given to the jury.

We cannot say that the trial court abused its discretion in sustaining the State's objections and limiting the scope of the defense argument.[16]

---

[13]See the "to convict" instruction at pages 104–05.

[14]See footnote 2.

[15]*State v. Mearns,* 7 Wn. App. 818, 502 P.2d 1228 (1972).

[16]In *State v. Costello,* 29 Wash. 366, 371, 69 P. 1099 (1902), the Supreme Court said, "The range of the argument of counsel rests largely in the discretion of the trial judge. Unless this discretion is abused to the prejudice of a defendant, an appellate court will not reverse a case for this reason alone. *Chezum v. Parker,* 19 Wash. 645 (54 Pac. 22); *State v. Bokien,* 14 Wash. 417 (44 Pac. 889)."

The judgment of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.