[No. 14411-1-I.   Division One.   May 21, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. TIMOTHY LEVERN GIEDD, *Appellant.*

---

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Greg Hubbard, Deputy,* for respondent.

SCHOLFIELD, C.J.—Timothy L. Giedd appeals from his conviction for negligent homicide, assigning error to the admission of evidence of intoxication and to the trial court's instruction to the jury on proximate cause. We affirm.

## FACTS

Giedd was charged with negligent homicide in connection with the death of Kimberly Fitzpatrick on February 25, 1983. Fitzpatrick died in the crash of an automobile owned and operated by Giedd. After the accident, Giedd told investigating officers that he had been driving at a moderate speed when he heard a loud bang and the car skidded out of control. He told police that he suspected that the right rear wheel of the car had snapped off. A State Patrol accident reconstructionist testified, however, that the automobile left the roadway at no less than 69 m.p.h. and that

the right rear wheel had been broken off during the crash, not before.

At trial, there was testimony that, on the day of the accident, Giedd's automobile had a variety of mechanical problems, including a front–end misalignment, missing lug nuts, worn rear tires and a broken speedometer. Also, Giedd had recently installed a racing–style transmission in the automobile, and he testified that it was not shifting properly prior to the accident. Unlike the theory he had first proposed to the police, Giedd told the jury that apparently the transmission had suddenly self–shifted into second gear, causing the car to skid out of control.

Two half cases of beer bottles, some still unopened, were found near the scene of the crash. The three survivors admitted to police that the beer was in the car, but denied that they had been drinking at the time of the accident. Giedd told the police that he had consumed about two beers during the course of the evening. His blood alcohol level, tested approximately 2 hours after the accident, was .06 percent. He was not charged with driving while intoxicated, however, and brought a motion in limine to exclude all evidence of intoxication at trial. The trial court denied the motion, and the state toxicologist was allowed to testify that Giedd's blood alcohol level could have been between .05 and .09 percent at the time of the accident, or the equivalent of between 2 and 4½ beers.

The jury found Giedd guilty as charged.

### EVIDENCE OF INTOXICATION

Giedd contends that the introduction of evidence of his blood alcohol level violated ER 403. He argues that, since he was not charged with driving while intoxicated, any probative value of the evidence was substantially outweighed by the danger that it would unfairly prejudice and confuse the jury.

ER 403 provides in pertinent part that even relevant evidence may excluded:

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . .

The rule contemplates a balancing of the probative value of evidence against its undesirable prejudicial effects. 5 K. Tegland, Wash. Prac. § 105 (1982). The trial court, however, has broad discretion in this balancing process. *See United States v. Robinson,* 560 F.2d 507, 514–15 (2d Cir. 1977).

Evidence of intoxication was found to be admissible in a prosecution for reckless driving, even though the defendant had already been acquitted on a charge arising from the same incident of driving while intoxicated in *State v. Birch,* 183 Wash. 670, 49 P.2d 921 (1935). Birch was charged under a statute which made illegal "driving in such manner as to endanger or inconvenience unnecessarily other users of [the] highway". *Birch,* at 674. The court held that:

In view of the known effect of alcohol, it is for the jury to say whether or not its use by the accused, under the circumstances, rendered him incapable of driving, in accordance with the standard fixed in the statute.

*Birch,* at 674. *See also Bates v. Tirk,* 177 Wash. 286, 290, 31 P.2d 525 (1934) (evidence of intoxication held admissible on issue of negligent operation of automobile).

In a more recent case, the defendant sought to exclude evidence of his intoxication at the time of arrest, arguing that it was not relevant either to the charge of negligent driving or resisting arrest and that the State's only purpose in introducing the evidence was to prejudice his case before the jury. *State v. Travis,* 1 Wn. App. 971, 465 P.2d 209 (1970). Relying on *State v. Birch, supra,* this court held that "[w]hether Travis' use of intoxicants influenced his driving was an issue for the jury to resolve." *Travis,* at 974.

In both *Birch* and *Travis,* the use of intoxicants was part of the transaction which gave rise to criminally culpable conduct, and even though the defendants were not being prosecuted for crimes directly related to intoxication, evidence of their intoxication was held to be relevant and

admissible with regard to its effect on their driving. Birch admitted that he had been drinking, and Travis told police that he had consumed four beers prior to his accident. In the case sub judice, the relevance of Giedd's blood alcohol level was made clear to the jury when the state toxicologist testified that it indicated that Giedd had consumed between 2 and 4½ beers prior to the accident.

Giedd was not charged under the vehicular homicide statute with driving while intoxicated, but rather was accused of recklessness and disregard for safety.[1] Nevertheless, as in *Birch* and *Travis,* Giedd's use of intoxicants was part of the same transaction from which criminal liability arose. Therefore, it was proper for the jury, when deciding whether Giedd operated his vehicle in a reckless manner or with disregard for the safety of others, to consider what effect, if any, his drinking had on his driving.

## JURY INSTRUCTIONS

Giedd also assigns error to the trial court's instruction to the jury on proximate cause, arguing that the instruction should have included the concept of foreseeability and should have better defined intervening and superseding causation. He did not take exception to the instruction at trial, but maintains that error can be raised for the first time on appeal because the instruction was constitutionally deficient, in that it misstated an essential element of the crime, and thus relieved the State of its burden of proof. *State v. Theroff,* 95 Wn.2d 385, 622 P.2d 1240 (1980).

When instructing the jury on the statutory definition of the crime charged, all of the essential elements should be set forth. *State v. Emmanuel,* 42 Wn.2d 799, 820, 259 P.2d 845 (1953). The vehicular homicide statute requires the

---

[1]RCW 46.61.520(1) states:

"When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person [1] while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61-.502, or [2] by the operation of any vehicle in a reckless manner or [3] with disregard for the safety of others, the person so operating such vehicle is guilty of vehicular homicide."

State to prove, as an essential element of the crime, a causal connection between the defendant's conduct and the resulting death. *State v. Mearns,* 7 Wn. App. 818, 502 P.2d 1228 (1972).

The trial court's instruction to the jury on proximate cause read:

> The term "proximate cause" means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened.

Instruction 7. The Washington Supreme Court approved of a substantially similar instruction in *State v. Engstrom,* 79 Wn.2d 469, 487 P.2d 205 (1971), holding that it properly required a causal connection between the act complained of and the death. *Engstrom,* at 473–74. An identical instruction to that at issue was upheld in *State v. Fateley,* 18 Wn. App. 99, 104–05, 566 P.2d 959 (1977). Moreover, the instruction at issue here was taken directly from WPIC 25.02.

█ Giedd's objection to the instruction is not well taken. Foreseeability is not an element of proximate cause. *Rikstad v. Holmberg,* 76 Wn.2d 265, 268, 456 P.2d 355 (1969). *See also Blodgett v. Olympic Sav. & Loan Ass'n,* 32 Wn. App. 116, 119, 646 P.2d 139 (1982) (error to inject the issue of foreseeability into the instruction on proximate cause). The comment to WPI 15.01, from which WPIC 25.02 was adapted, addresses "foreseeability" at length:

> [E]ven though "reasonable foreseeability" is necessarily a controlling factor in determining the existence of negligence, . . . it is not a real element in the definition of "proximate cause." . . .
>
> The chief value of the "foreseeability" formula is in those cases wherein intervening or superseding forces have come into active operation at a time subsequent to the defendant's conduct. . . . The definition of "proximate cause" should not be further complicated by an attempt to provide for intervening or superseding negligence. This is the proper subject for a separate instruction (e. g., WPI 12.05, Negligence—Intervening Cause).

Although the evidence may have supported a separate instruction on intervening or superseding causes of the accident, that is, a mechanical failure versus Giedd's reckless conduct, he did not request such an instruction at trial.

We recognize that a pattern instruction is not a talisman that wards off judicial scrutiny, but we decline Giedd's invitation to question the constitutionality of WPIC 25.02. Accordingly, the judgment of the trial court is affirmed.

WILLIAMS and RINGOLD, JJ., concur.