[No. 15021-9-I. Division One. May 21, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. CAROL FORBES, ET AL, *Appellants*.

*Norm Maleng, Prosecuting Attorney,* and *David W. Merrell, Deputy,* for respondent.

SCHOLFIELD, C.J.—

FACTS

On January 19, 1984, Carol Forbes, Charles Gilbert and Mark Henderson, a/k/a Mark Youngblood, were charged by information with committing the crime of professional gambling, contrary to RCW 9.46.020(17)(a) and (b) and RCW 9.46.220.

The State's evidence showed that an undercover King County detective, P. J. Covey, was admitted to an "after hours" card game at Forbes' home on June 25, 1983. On that occasion, Gilbert, as dealer, took a cut from each hand played, of $1 to $3 depending on the size of the pot. Covey bought $300 worth of chips and played for 6 hours.

On July 1, 1983, Covey returned to the same location and bought $550 in chips—$350 in cash and $200 on credit. Gilbert was again the dealer, and he took a $1 to $2 cut from each hand. Additionally, the winner of each hand gave

the dealer $1 to $2.

On July 17, 1983, Youngblood (Henderson) served as dealer, relieved occasionally by Forbes. Youngblood removed $1 to $2 per pot. During the last hour, the players took turns as dealer, and Gilbert, who was playing, took the money from the pot. Youngblood received approximately $120 in tips that evening. Appellants have not provided this court with a complete trial transcript, but have indicated that they disagree with the State's evidence concerning the number of hands played and the amounts taken from each pot.

The trial court granted the State's pretrial motion to forbid the defendants from informing the jury that the crime of professional gambling is a felony charge. The defendants moved for a directed verdict, claiming that the State failed to prove that a "profit" was made from the games. When this motion was denied, the defendants then asked for a jury instruction defining profit as "net profit", which was also denied. The jury found Forbes, Gilbert and Henderson guilty of professional gambling.

The court deferred imposition of sentence for a period of 3 years on condition that each defendant perform 100 hours of community service, pay a $500 fine, and make restitution to the King County Department of Public Safety in an amount set by the King County Prosecutor's Victim Assistance Unit to cover Detective Covey's gambling losses.

### FELONY CHARGE

Forbes, Gilbert and Henderson argue that they were unduly prejudiced because counsel could not ask the jurors to use caution in their determination based on the seriousness of the charge.

The only case dealing with this issue in Washington is *State v. Fateley,* 18 Wn. App. 99, 566 P.2d 959 (1977), concerning a prosecution of a motorcycle operator for negligent homicide following an accident which killed his passenger. Fateley contended that the trial court erred in failing to include the word "feloniously" in the "to convict" instruc-

tion. Fateley argued that the jury needed this information to be aware that ordinary negligence was not sufficient for a conviction. The court held that no error was committed because Fateley was able to argue his theory of the case under the instructions given. *Fateley,* at 106.

■ Similarly, the inquiry here is whether the defendants were in some way prevented from presenting their theory of the case. Forbes, Gilbert and Henderson do not assert that they were prevented from doing so. Rather, they argue that their counsel was prevented from admonishing the jury to use care. Whether an offense is a felony or misdemeanor affects sentencing and is irrelevant to the issue of guilt or innocence.

Presumably, WPIC 1.02 was included in the court's jury instructions as it is in virtually every jury case. It reads in pertinent part:

> You have nothing whatever to do with the punishment to be inflicted in case of a violation of law. The fact that punishment may follow conviction cannot be considered by you except insofar as it may tend to make you careful.

Therefore, reversible error did not take place.

## Professional Gambling

RCW 9.46.220 states in part that:

> Whoever engages in professional gambling, or knowingly causes, aids, abets, or conspires with another to engage in professional gambling, shall be guilty of a felony . . .

RCW 9.46.020(17) defines "professional gambling" as follows:

> A person is engaged in "professional gambling" when:
> (a) Acting other than as a player or in the manner set forth in RCW 9.46.030 as now or hereafter amended, he knowingly engages in conduct which materially aids any other form of gambling activity; or
> (b) Acting other than as a player, or in the manner set forth in RCW 9.46.030 as now or hereafter amended, he knowingly accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the

proceeds of gambling activity;

RCW 9.46.020(16) defines "player" as follows:

"Player" means a natural person who engages, on equal terms with the other participants, and solely as a contestant or bettor, in any form of gambling in which no person may receive or become entitled to receive any profit therefrom other than personal gambling winnings, and without otherwise rendering any material assistance to the establishment, conduct or operation of a particular gambling activity. A natural person who gambles at a social game of chance on equal terms with the other participants therein does not otherwise render material assistance to the establishment, conduct or operation thereof by performing, without fee or remuneration, acts directed toward the arrangement or facilitation of the game, such as inviting persons to play, permitting the use of premises therefor, and supplying cards or other equipment used therein. . . .

RCW 9.46.030 defines a lengthy list of authorized gambling activities. Subsection (4) authorizes any person, association or organization, which operates an established business whose primary purpose is the selling of food or drink for consumption on the premises, to conduct social card games.

RCW 9.46.020(20)(c) and (d) describe the term "social card game" as requiring that:

(c) No organization, corporation or person collects or obtains or charges any percentage of or collects or obtains any portion of the money or thing of value wagered or won by any of the players: *Provided,* That this item (c) shall not preclude a player from collecting or obtaining his winnings; and

(d) No organization or corporation, or person collects or obtains any money or thing of value from, or charges or imposes any fee upon, any person which either enables him to play or results in or from his playing in excess of two dollars per half hour of playing time by that person collected in advance: . . .

Thus, a person's activities would not be considered illegal professional gambling if that person were either (a) a player, or (b) conducting activities in conformance with

RCW 9.46.030, such as a social card game.

In the case before the court, the evidence at trial showed that Forbes, Gilbert and Henderson could not claim that their activities fall under the definition of "player". None of the three participated in the card games solely as contestants or bettors, as required by the "player" definition. Neither Henderson nor Forbes played in the game, and although Gilbert played on one night, he acted as a dealer on other nights.

The appellants focus on another aspect of the "player" definition, claiming that they fall under the player exemption because the money they received at the games did not leave a *net* profit after expenses. The appellants argue that the trial court erred in failing to define "profit" for the jury as "net profit". The appellants ask that this court interpret the professional gambling statute under a balance sheet concept, in which professional gambling is only taking place if the amounts charged to the players exceed expenses incurred by the house.

The appellants' argument must fail on two counts. First, case law has determined that if the Legislature uses words which have a common meaning, that meaning will be applied to the statutory language, unless it results in an absurdity or incongruity. *In re Lehman,* 93 Wn.2d 25, 27, 604 P.2d 948 (1980). The Legislature's intention in passing the Gambling Act of 1973, as noted in RCW 9.46.010, is to "restrain all persons from seeking profit from professional gambling activities in this state". Thus, the Legislature's concern is not whether an organizer of a card game actually makes money, but rather the Legislature wishes to discourage persons from *seeking* to make money in this manner.

Furthermore, in RCW 9.46.020(16), a person is not a "player" if the game is one where a person "may receive or become entitled to receive any profit . . . other than personal gambling winnings". The emphasis is on *entitlement* rather than actual receipt of profit or gain.

Even if the court were to adopt the appellants' definition

of "profit", as noted above, none of the three participated in the games solely as a contestant or bettor. The player exemption to the definition of "professional gambling" is not satisfied here.

The activities engaged in by the appellants are also not exempt under RCW 9.46.030. The games conducted at the home of Forbes were not "social card games". The group organizing the card games was not a nonprofit organization. Additionally, the money charged the players was not collected in advance. Lastly, the entity running the card games was not an established business whose primary purpose is selling food or drink. Thus, the appellants do not fit under the authorized activities exception to the definition of "professional gambling".

Therefore, the question is whether the appellants knowingly engaged in conduct which materially aided any other form of gambling activity or knowingly accepted or received money or other property pursuant to an agreement or understanding with any person whereby they participated in the proceeds of a gambling activity.

All three appellants materially aided gambling activity during Detective Covey's visits to the Forbes homes. All three acted as dealers at some point during the games. Additionally, Forbes provided her home for the illicit games. We therefore affirm the convictions of Forbes, Gilbert and Henderson.

### RESTITUTION

RCW 9.95.210(2) authorizes the court to require as a condition of probation "restitution to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question". The appellants argue that such restitution is limited to victims named in the information. *See State v. Theroff,* 33 Wn. App. 741, 657 P.2d 800 (1983).

However, the Washington Supreme Court has extended restitution in *State v. Barr,* 99 Wn.2d 75, 78, 658 P.2d 1247 (1983), to "any person" who suffers a loss as a result of a

crime committed, just as the statute reads. *See also State v. Eilts,* 94 Wn.2d 489, 617 P.2d 993 (1980); *State v. Mark,* 36 Wn. App. 428, 675 P.2d 1250 (1984).

The appellants' argument here must fail. The trial court is certainly in a position to determine to whom restitution should be paid. The trial court did not exceed its authority by determining that the agency which supplied Detective Covey with money to spend at the illegal games should be reimbursed.

■ However, the trial court's order deferring imposition of sentence states that "[r]estitution shall be made to King County Dept. of Public Safety *in the amount set by King County Prosecutor's Office VAU."* (Italics ours.) This language indicates an abdication of the trial court's authority to set the amount of restitution. RCW 9.94A.140(1) states in part that:

> If restitution is ordered, *the court shall determine the amount of restitution* due at the sentencing hearing or within sixty days and may set the terms and conditions under which the defendant shall make restitution.

(Italics ours.) The trial court may not delegate the responsibility of setting the amount of restitution to another agency. This is especially true under the circumstances here because the victim, the King County Department of Public Safety, and the agency ordered to set restitution, the Prosecutor's Office, are both part of county government.

Court supervision of the setting of restitution is necessary to ensure that victims are compensated for actual loss, as provided for under the restitution statute. Therefore, this case must be remanded to the trial court to enable it to set the amount of restitution to be paid by the appellants, in an amount not to exceed the total of Detective Covey's gambling losses. In all other respects, the judgment of the trial court is affirmed.

WILLIAMS and RINGOLD, JJ., concur.