IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37413-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GENARO VAZQUEZ VISOSO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — A driver is guilty of vehicular homicide if a person dies "within three years as a proximate result of injury proximately caused . . . by the driver [who] was operating a motor vehicle: (a) [w]hile under the influence of intoxicating liquor or any drug . . .; or (b) [i]n a reckless manner; or (c) [w]ith disregard for the safety of others." RCW 46.61.520. On the afternoon of October 20, 2017, while reaching for his cell phone, Genaro Visoso ran a stop sign while speeding into arterial cross traffic and collided with the vehicle of Kelly Norris killing him instantly. Mr. Visoso was transported to the hospital where health care workers observed that he was intoxicated. The State charged Mr. Visoso with vehicular homicide under all three alternative means. Collision reconstruction and intoxication experts testified at trial. The jury unanimously found Mr. Visoso guilty on the reckless and disregard prongs but were not unanimous as

to the intoxication prong.  Mr. Visoso timely appealed arguing that there was insufficient evidence to convict because reaching for his cell was only ordinary negligence.  Finding the evidence sufficient, we affirm.

FACTS

On October 20, 2017, Mr. Visoso was driving on Road K Northwest in rural Quincy, Washington.  At the same time, Mr. Norris was driving on east-west Road 9 Northwest in his assigned lane.  The speed limit on Road 9 is 55 m.p.h.  The speed limit on road K is 50 m.p.h.  Where the two roads intersect, Road K has a stop sign and Road 9 does not.  On Road K, 729 feet prior to the intersection stop sign, there is a "stop ahead" sign.  On that day, at approximately 3:15 p.m., Mr. Visoso without braking failed to stop at the Road K stop sign and T-boned the front driver side of Mr. Norris' vehicle.  Both cars were going approximately the same speed before impact.  Both cars flipped and rolled southeast into the field.  Mr. Visoso's car caught fire.  *Id.*[1]  Mr. Norris died at the scene of the collision.

Mr. Visoso was transported approximately seven miles to the Quincy Valley Medical Center due to his injury.[2]  One of the transporting emergency medical technicians (EMTs) noticed that Mr. Visoso's breath smelled like alcohol and informed

---

[1] A passer-by stopped and pulled Mr. Visoso out of his burning car but did not see the collision.  Other than the defendant, there were no eye-witnesses to the collision.

[2] Mr. Visoso had a broken leg, rib fractures, a broken wrist, a broken foot, internal lacerations to his liver and spleen, and other lesser injuries.

the deputy on duty. At some time prior to arrival at the hospital around 4:15 p.m., another EMT drew Mr. Visoso's blood and sent it for testing at the hospital laboratory. The hospital laboratory result indicated 0.082 grams per 100 milliliters blood alcohol which the treating doctor considered elevated.[3] At trial, the treating doctor testified regarding the impairing effects of alcohol including slowed reaction times, altered cognitive ability and affected memory, and the rate at which alcohol dissipates from the body. He noted that pain masks impairment.

A trained drug recognition expert officer responded to the hospital and contacted Mr. Visoso where she noted the odor of alcohol, slurred speech and slow response. She was unable to get another blood sample from Mr. Visoso due to his medical condition which required helicopter transport to Confluence Health Central Washington Hospital (CHCW). The attending orthopedic surgeon at CHCW noted that Mr. Visoso slurred his words, smelled of alcohol and had an elevated blood alcohol level resulting in the medical conclusion that Mr. Visoso was intoxicated and could not give informed consent to surgery. The surgeon felt that concussion, or the administration of Fentanyl for pain would not explain the signs of intoxication observed at CHCW.

---

[3] Mr. Visoso's rebuttal expert testified that the blood alcohol conversion factor between serum blood and whole blood was 1.20 and would modify the 0.082 serum result to 0.068 whole blood level. Hospitals use serum results and the Washington State Toxicology Laboratory uses whole results.

The State charged Mr. Visoso with vehicular homicide under all three prongs: operating a vehicle (1) in a reckless manner, (2) while under the influence of intoxicating liquor or any drug defined in RCW 46.61.502, or (3) with disregard for the safety of others.

At trial, officers testified to Mr. Visoso's statements, and the State played Mr. Visoso's redacted body camera statement, recorded six days after the collision. He indicated that at the time of the collision he was driving between 53 and 58 m.p.h., which is above the posted 50 m.p.h. speed limit. He told investigating officers that the collision occurred because he became distracted when he reached for his cell phone on the vehicle floor. He admitted that he would typically pull over in a situation like this, but did not this time. When asked how he could have avoided the collision, he indicated "[p]ay more attention to the road." Report of Proceedings (RP) at 695. He denied drinking alcohol the day of the collision. He estimated that he had previously traveled Road K eight to ten times but denied being aware of any road signs. On the day of the collision, he indicated that he did not see the "stop ahead" warning sign or the stop sign at the intersection with Road 9. RP at 690. Mr. Visoso indicated that his vehicle was in good working order and that he has good eyesight and does not need corrective lenses.

At trial, the accident reconstructionist assumed that both vehicles were moving at their respective speed limits. The day of collision was clear with dry road conditions. He calculated it would have taken Mr. Visoso approximately 10 seconds to drive from the

warning sign to the stop sign. He also indicated that a person with good vision could see the warning sign from approximately 1500 feet further up the road. This visibility point is approximately 2200 feet from the actual intersection stop sign. He concluded that visibility of the intersection was "great." RP at 572. A driver traveling the posted speed limit would have had about 30 seconds from the warning visibility point until the intersection in which to take action.

The jury found Mr. Visoso guilty of vehicular homicide. By special verdict, they indicated unanimous guilt under the reckless manner and disregard prongs. The jury was not unanimous with regard to operating a vehicle under the influence of intoxicants prong. Mr. Visoso timely appealed.

## ANALYSIS

Mr. Visoso argues that there is insufficient evidence to support his conviction for vehicular homicide. He contends that reaching for his cell phone constitutes ordinary negligence which is insufficient to support vehicular homicide. We disagree and find the evidence sufficient. The jury was not required to accept Mr. Visoso's explanation of the accident. The evidence presented at trial is sufficient to support the jury's finding that Mr. Visoso drove in a reckless manner and with disregard for the safety of others.

Sufficiency of the evidence is reviewed de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Washington follows the standard of review for a challenge to the sufficiency of the evidence as set out in *Jackson v. Virginia*. *State v. Green*, 94

5

Wn.2d 216, 221, 616 P.2d 628 (1980). When reviewing a challenge to the sufficiency of the evidence to prove the elements of an offense, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The purpose of this standard of review is to ensure that the trial court fact finder rationally applied the constitutional standard required by the due process clause of the Fourteenth Amendment to the United States Constitution, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt. *Jackson*, 443 U.S. at 317-18.

In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). These inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Further, we must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The presence of countervailing valuation evidence is irrelevant to a challenge to the sufficiency of evidence because the evidence is viewed in the light most favorable to the State. *State v. Sweany*, 174 Wn.2d 909, 918, 281 P.3d 305 (2012).

The vehicular homicide statute provides that a driver is guilty of vehicular homicide if a person dies within three years as a proximate result of an injury proximately

caused by a driver who operated a motor vehicle: (a) while under the influence of intoxicating liquor or any drug as defined in RCW 46.61; or (b) in a reckless manner; or (c) with disregard for the safety of others. RCW 46.61.520(1), (2). In a vehicular homicide case, the State must prove a causal connection between the defendant's conduct and the resulting death. *State v. Giedd*, 43 Wn. App. 787, 791-92, 719 P.2d 946 (1986).

Jurors are not required to be unanimous on which of the three means the State has proved, provided the alternate means are not repugnant to each other and there is substantial evidence to support each of these means. *State v. Randhawa*, 133 Wn.2d 67, 73-74, 941 P.2d 661 (1997) (vehicular homicide conviction upheld where sufficient evidence of defendant consuming alcohol before speeding and swerving off the road demonstrated both intoxication and reckless prongs). If there is sufficient evidence to support each alternative means submitted to the jury, the conviction will be affirmed because we infer that a rational jury would rest its decision on a unanimous finding as to the means. *Id.*[4]

Mr. Visoso argues that his actions were negligent, not reckless. The term "in a reckless manner" is not defined in either the vehicular homicide statute, RCW 46.61.520,

---

[4] *See also State v. Barefield* for this premise. 47 Wn. App. 444, 458-60, 735 P.2d 1339 (1987) (the court found sufficient evidence to convict on all three prongs where the defendant caused a collision after crossing over the center line while intoxicated with a blood alcohol level of 0.18 and admitted to drinking beforehand), *aff'd* 110 Wn.2d 728, 756 P.2d 731 1988).

7

or the vehicular assault statute, RCW 46.61.522, nor is the term defined elsewhere in the motor vehicle code. *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005). The *Roggenkamp* court re-affirmed the settled definition of "driving in a reckless manner" under the vehicular assault and vehicular homicide statutes as driving in a "rash or heedless manner, indifferent to the consequences." *Id*. at 621-22.[5] Where Mr. Roggenkamp's actions caused the collision, the concurring bad actions of the victim driver did not render the evidence insufficient. *Id*. at 630-31. Mr. Roggenkamp collided with the victim's car after passing into oncoming traffic at more than twice the speed limit. *Id*. at 618. His attempts to brake caused his car to skid into the victim's vehicle. *Id.* n.9. The victim's 1.3 blood alcohol concentration and failure to stop at a stop sign immediately prior to the collision did not mitigate the causation. *Id*. n.9.

Mr. Visoso argues that "driving in a reckless manner" as defined by *Roggenkamp* requires proof of egregious actions that were not present in his case. His argument fails to acknowledge that evidence of consuming alcohol is relevant to show driving in a reckless manner even if the jury does not agree that the defendant was intoxicated. Many of the numerous cases cited by Mr. Visoso actually support the existence of sufficient evidence in the present case. In *State v. Fateley*, the court found sufficient evidence of

---

[5] The meaning of reckless for the purposes of the vehicular homicide standard is not the same meaning of reckless in the reckless driving statute and the two should not be confused. *Roggenkamp*, 153 Wn.2d at 623.

reckless driving to support a conviction under the former negligent homicide statute

where the defendant was intoxicated and drove his motorcycle across the oncoming lane

of traffic of a road he was familiar with and no other irregularity existed on the road to

explain his driving.  18 Wn. App. 99, 103, 566 P.2d 959 (1977).  Notably, evidence of

intoxication is relevant to proving reckless driving.  *Id.* at n.5; *See also State v. Travis*, 1

Wn. App. 971, 974, 465 P.2d 209 (1970) (evidence that the defendant had been driving

was relevant to charge of reckless driving).  Here, the jury's lack of unanimity on the

intoxication prong does not mean they were precluded from considering evidence of

drinking under the reckless prong.

In *State v. Hill*, the defendant's intoxication, and driving the wrong way on the

freeway before collision without attempting to avoid other cars, together constituted

driving "in a reckless manner" within the meaning of the vehicular assault statute.  48

Wn. App. 344, 348, 739 P.2d 707 (1987).  *State v. Baker* involved the former negligent

homicide statute RCW 46.56.040.[6]  56 Wn.2d 846, 849, 355 P.2d 806 (1960).  In *Baker*,

the court held that there was sufficient evidence to support both the intoxication and

reckless prongs of the statute where the defendant admitted to drinking, the officer

---

[6] RCW 46.56.040 was recodified as the current vehicular homicide statute RCW 46.61.520 in 1965.  LAWS OF 1965, Ex. Sess., ch. 155, § 92; *State v. Partridge* also dealt with the former negligent homicide statute but "reckless" was not defined by case law at the time of the decision.  47 Wn.2d 640, 645, 289 P.2d 702 (1955) (jury instructions permitting conviction on ordinary negligence for driving in a reckless manner deemed improper and disregard prong not addressed).

testified to Baker's intoxication, and evidence showed the defendant driving at a high rate of speed in a crowded intersection before swerving and striking the victim pedestrian. *Id.* at 861.

In this case, Mr. Visoso admits to driving over 50 m.p.h. on a two-lane road and reaching for his cell phone on the floor. While he claims that he was only "momentarily" distracted, the evidence demonstrates that he had at least 30 seconds to see warning signs and the approaching intersection. On a clear day with no visibility limitations, he blew a stop without slowing or braking, and hit Mr. Nelson's vehicle at full speed. This evidence supports a finding that Mr. Visoso's distraction was more than "momentary." In combination with evidence that he had alcohol in his system, the jury could find that Mr. Visoso was driving in a rash or heedless manner, indifferent to the consequences.

This evidence also supports a conviction under the third prong of the statute: that Mr. Visoso drove a motor vehicle "with disregard for the safety of others." RCW 46.61.520(1)(c). In *State v. Eike*, the court defined the disregard prong of vehicular homicide, distinguishing it from the reckless prong standard. 72 Wn.2d at 762-63. Disregard for the safety of others "implies an aggravated kind of negligence or carelessness, falling short of recklessness but constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term "'negligence.'" . . . . To drive with disregard for the safety of others, consequently, is a greater and more marked dereliction than ordinary negligence. It does not include the

10

many minor inadvertences and oversights which might well be deemed ordinary negligence under the statutes." *Id*. at 765-66.

In *State v. Jacobsen*, 78 Wn.2d 491, 498, 477 P.2d 1 (1970), the court found that this standard was not vague and concisely reaffirmed it stating that disregard for safety implies "an aggravated kind of negligence, falling short of recklessness, but more serious than ordinary negligence." *Id*. Later case law clarified the disregard prong. "Some evidence of a defendant's conscious disregard of the danger to others is necessary to support a charge of vehicular homicide." *State v. Vreen*, 99 Wn. App. 662, 994 P.2d 905 (2000) (juror peremptory challenge denial was reversible error and evidence ruling erroneous where victim's relationship to defendant was relevant to "disregard"), *aff'd*, 143 Wn.2d 923, 26 P.3d 236 (2001), *abrogated by Rivera v. Illinois*, 556 U.S. 148, 129 S. Ct.1446, 173 L. Ed. 2d 320 (2009).

In this case, neither party cites any cases involving cell phone distraction. While none exists in Washington, numerous exist in Texas. In *Montgomery v. State*, the court found that evidence was sufficient to support a conviction for criminally negligent homicide where the defendant caused a collision of three vehicles while driving her vehicle on a highway access road at less than 50 miles per hour, and abruptly changed lanes across multiple occupied lanes to enter the highway without signaling or looking while talking on her cell phone. 369 S.W.3d 188, 194 (Tex. Crim. App. 2012). Where the defendant admitted that using the cell phone had distracted her, the court indicated

that she ought to have been aware of the substantial and unjustifiable risk created by her actions. *Id*. The court noted that the State had no burden to show that driving while using a cell phone is always risky or dangerous, or that it, of itself, creates a substantial and unjustifiable risk, only that appellant's use of a cell phone *in this case* created a substantial and unjustifiable risk because it interfered with her ability to maintain a proper lookout for other vehicles. *Id*.

We agree that, under the facts of this case, prolonged distraction by cell phone coupled with alcohol consumption provides sufficient evidence to support a jury finding of more than ordinary evidence. Here, the record clearly supports the facts that Mr. Nelson was killed because Mr. Visoso ran a stop sign at lethal highway speed without slowing or braking in anticipation of the intersection despite plainly visible warning signs. There was evidence that alcohol in his system likely affected his reaction times and awareness of his surroundings. Mr. Visoso admits that he was distracted and should have pulled over before reaching for the phone. His distraction and alcohol consumption posed a great and obvious risk to other drivers on the road and anyone with basic general awareness of safety would have known to avoid such serious failures.

The evidence was sufficient to support Mr. Visoso's conviction for vehicular homicide under the reckless and disregard prong of the statute.

No. 37413-1-III
*State v. Visoso*


Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.

13