[No. 8336–5–III. Division Three. July 2, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. JULIA M. HILL, *Appellant.*

*James S. Hogan,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *John C. Monter, Deputy,* for respondent.

GREEN, J.—Julia M. Hill appeals her conviction for vehicular assault.

Shortly before midnight on May 31, 1985, Ms. Hill was unlawfully driving her automobile north in the southbound lanes of Interstate 82 just south of Union Gap. At the same time, Nolan Harkness was driving his Toyota south in the southbound lanes with his fiancee Carla Gardinier as a passenger. The two cars collided head–on. At the scene of the accident, State Trooper Burgess noticed a strong odor of intoxicants on Ms. Hill's breath. Ms. Hill's and Mr. Harkness' injuries were minor. However, Miss Gardinier sustained lacerations to her face including a 4–inch–long L–shaped laceration to her forehead, a deep puncture wound

to her inner thigh, a gash on her right ankle, a sprained toe and major chest contusions. She has permanent scars from these injuries. At the hospital at approximately 2 a.m., Ms. Hill was advised she was under arrest for vehicular assault, read her rights, then asked if she would consent to a blood test. She refused and asked for her sister and an attorney. When her attorney arrived at 3:15 a.m., a blood sample was taken and the results indicated .18 percent alcohol content by weight. Ms. Hill's motion to suppress the blood test results was denied and she was found guilty. She appealed directly to the Supreme Court, but the case was transferred to this court for determination.

The issues presented are whether: (1) the victim's injuries constituted "serious permanent disfigurement" as defined in RCW 46.61.522(2); (2) Ms. Hill's conduct constituted driving "[i]n a reckless manner" under RCW 46.61-.522(1)(a); (3) the statute is unconstitutionally vague because it fails to define the term "reckless"; (4) RCW 46.20.308(3) authorizes the State to obtain a blood sample from a person arrested for vehicular assault if the "assault" did not involve a potentially fatal injury; (5) a nonconsensual taking of a blood sample without a warrant is an unreasonable and unconstitutional search; and (6) there was sufficient evidence to establish beyond a reasonable doubt Ms. Hill was intoxicated or that such condition was the proximate cause of the accident. We affirm.

First, Ms. Hill contends the court erred in determining as a matter of law that Miss Gardinier's injuries constituted "serious permanent disfigurement" or "'[s]erious bodily injury'" within the meaning of RCW 46.61.522(2). Whether injuries sustained constitute grievous bodily harm is ordinarily a question for the fact finder. *State v. Salinas,* 87 Wn.2d 112, 121, 549 P.2d 712 (1976); *State v. Linton,* 36 Wn.2d 67, 96, 216 P.2d 761 (1950). Contrary to what Ms. Hill contends, the trial court entered finding of fact 3 on this point and did not conclude the scars were a "serious

permanent disfigurement" as a matter of law.[1] Thus, we find no error.

RCW 46.61.522(2) provides: "'Serious bodily injury' means bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." The question then is whether Miss Gardinier's injuries constituted serious bodily injury because they were a "serious permanent disfigurement".

Neither the Washington statutes nor case law define what is a "serious permanent disfigurement". Other jurisdictions have defined disfigurement as "'that which impairs or injures the beauty, symmetry or appearance of a person or thing; or that renders unsightly, misshapen, or imperfect, or deformed in some manner.'" *Gillman v. Gillman,* 319 So. 2d 165, 166 (Fla. Dist. Ct. App. 1975) (quoting *Bethlehem–Sparrows Point Shipyard, Inc. v. Damasiewicz,* 187 Md. 474, 50 A.2d 799 (1947)); *see also Caruso v. Hall,* 101 A.D.2d 967, 477 N.Y.S.2d 722 (1984); *Branham v. Denny Roll & Panel Co.,* 223 N.C. 233, 25 S.E.2d 865 (1943).

Here, the evidence shows Miss Gardinier sustained lacerations to her face resulting in an L–shaped scar on her forehead into the hairline. She also had another scar 2 centimeters long in the center of her forehead. Her treating physician testified the scars were permanent and plastic surgery could not erase them 100 percent. She also had a scar on her right thigh which is visible when she wears a swimsuit. Miss Gardinier was a witness during trial and the judge had the opportunity to view the scars left from the accident. We will not disturb the factual finding entered by the court.

Second, Ms. Hill contends the court erred in holding she was driving in a reckless manner because driving the wrong way on a freeway is only a traffic infraction; she could only

---

[1] *Williams v. Payne,* 131 Mich. App. 403, 346 N.W.2d 564 (1984) is not on point as the legislature and courts of that state indicate that whether there has been a permanent serious disfigurement is a question of law.

be found guilty of negligent driving. We disagree.

■ RCW 46.61.522 provides in part:

(1) A person is guilty of vehicular assault if he operates or drives any vehicle:
(a) In a *reckless manner*, and this conduct is the proximate cause of serious bodily injury to another; . . .

(Italics ours.) The statute does not define "reckless manner". However, case law defines "[t]o operate a vehicle in a reckless manner" as meaning a heedless, careless or rash manner or in a manner showing indifference to the consequences. *State v. Partridge*, 47 Wn.2d 640, 645–46, 289 P.2d 702 (1955); *State v. Fateley*, 18 Wn. App. 99, 105–06, 566 P.2d 959 (1977). *See also State v. Harvey*, 57 Wn.2d 295, 297, 356 P.2d 726 (1960). This is consistent with the new WPIC 91.03:

Vehicular Assault—Reckless Manner—Definition [New]
To operate a vehicle in a reckless manner means driving in a rash or heedless manner, indifferent to the consequences.

11 Wash. Prac. 258 (Supp. 1986). *State v. Stevick*, 23 Wn.2d 420, 161 P.2d 181 (1945), relied on by Ms. Hill, was overruled by *State v. Partridge, supra* at 646, on this issue.

Here, the evidence shows Ms. Hill was driving the wrong way on the freeway. She failed to attempt any avoidance of oncoming traffic and was intoxicated. *State v. Fateley, supra* at 103; *see also State v. Travis*, 1 Wn. App. 971, 974, 465 P.2d 209 (1970). The court did not err in concluding she was driving in a reckless manner.

■ Third, Ms. Hill contends the vehicular assault statute is unconstitutionally vague because it fails to define the word "reckless" and there are no statutory standards for distinguishing "reckless" from "ordinary negligence." *State v. Jacobsen*, 78 Wn.2d 491, 477 P.2d 1 (1970) is dispositive of this issue. In that case the defendant argued the language "in a reckless manner" as used in the vehicular homicide statute, RCW 46.61.520(1), was so vague that an accused could not understand the nature of the crime charged so as to intelligently admit or deny guilt. The court

held at page 498:

> Criminal statutes need not spell out with absolute certainty every act or omission which is prohibited if the general terms of the act convey an understandable meaning to the average person. This is especially true where the subject matter, as here, does not admit of precision. We think the terms "disregard for the safety of others" and "reckless manner" adequately convey such meaning.

(Citation omitted.) Thus, the court in *Jacobsen* upheld the statute and found the language "in a reckless manner" fairly apprised, in words of common understanding, the acts or omission proscribed.

Fourth, Ms. Hill contends RCW 46.20.308(3) does not authorize the State to obtain a blood sample from a person arrested for vehicular assault if the "assault" did not involve a potentially fatal injury; thus, the nonconsensual blood sample extracted from her was without legal justification and inadmissible. We disagree.

Former RCW 46.20.308(1) provides:

> Any person who operates a motor vehicle within this state is deemed to have given consent, . . . to a chemical test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

Subsection (2) of that statute allows a person to withdraw his implied consent, but by so doing risks revocation of his or her driver's license. Subsection (3) reads in part:

> If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61-.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which another person has been injured and there is a reasonable likelihood that such other per-

son may die as a result of injuries sustained in the accident, a breath or blood test may be administered without the consent of the individual so arrested.

The "last antecedent rule" provides:

> Where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent.

*Boeing Co. v. Department of Licensing*, 103 Wn.2d 581, 587, 693 P.2d 104 (1985) (quoting *Davis v. Gibbs*, 39 Wn.2d 481, 483, 236 P.2d 545 (1951)). "A comma serves many functions, but its purpose always is to set a phrase apart from the rest of the sentence." *East Gig Harbor Imp. Ass'n v. Pierce Cy.*, 106 Wn.2d 707, 713, 724 P.2d 1009 (1986).

 Here, subsection (3) of the implied consent statute sets out several scenarios, all separated by the word "or": when an individual is (1) unconscious; (2) under arrest for vehicular homicide; (3) under arrest for *vehicular assault;* or (4) under arrest for DWI. These scenarios are set apart by commas and applying the last antecedent rule, the phrase "which arrest results from an accident in which another person has been injured and there is a reasonable likelihood that such other person may die as a result of injuries sustained in the accident" refers to the last scenario, arrest for DWI.

Ms. Hill contends interpreting the statute in this manner renders it unconstitutional because it allows the arresting officer to determine arbitrarily whether the suspect will have the right to refuse a blood test. This is so, she contends, because the officer can in many cases elect to make an arrest either for DWI or for vehicular assault, and if the victim's injuries are not life threatening, the officer's decision to arrest for vehicular assault will deprive the suspect of the right to refuse to consent to a blood test.

There are two difficulties with this argument. First, there is no compelling reason to base the validity of a blood test obtained pursuant to RCW 46.20.308(3) on the arresting officer's subjective belief as to what offense he thought should ultimately be charged, so long as there was probable

cause to make an arrest for any of the three offenses described in the statute. *Waid v. Department of Licensing,* 43 Wn. App. 32, 34–35, 714 P.2d 681 (1986). *See Florida v. Royer,* 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (fact that officers did not believe there was probable cause did not foreclose State from proving there was in fact probable cause). Second, Ms. Hill fails to explain why the existence of police discretion would be unconstitutional. There is no constitutional right to be arrested for one offense rather than another; the only constitutional requirement is that there be probable cause to make an arrest. Nor is there any federal constitutional right to refuse to consent to a blood test following a DWI arrest even if no one was injured at all. *See Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

Fifth, Ms. Hill contends the blood sample evidence was inadmissible because the nonconsensual taking of the blood without a warrant was an unreasonable and unconstitutional search. We disagree.

■ The taking of blood samples constitutes a "search and seizure" within the meaning of U.S. Const. amend. 4 and Const. art. 1, § 7. *State v. Judge,* 100 Wn.2d 706, 711, 675 P.2d 219 (1984). The court in *Schmerber v. California, supra,* identified three requirements critical to the reasonableness of the intrusion of taking blood samples: (1) There must be a "clear indication" the desired evidence will be found; (2) the test chosen to measure the blood alcohol level must be reasonable; and (3) the test must be performed in a reasonable manner. *Judge,* at 711–12. The *Schmerber* Court went on to hold in 384 U.S. at 770–71:

> The officer in the present case . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened "the destruction of evidence[.]" We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investi-

gate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood–alcohol content in this case was an appropriate incident to petitioner's arrest.

. . . Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.

(Footnote and citations omitted.)

Here, the state trooper at the scene of the accident had probable cause to believe Ms. Hill was intoxicated (he smelled liquor on her breath, she was groggy, the circumstances of the accident, *i.e.*, going the wrong way on the freeway); therefore, there existed a clear indication blood alcohol tests would show she had consumed significant quantities of alcohol. The evidence indicates the method of blood alcohol testing used on Ms. Hill was reasonable and was performed in the hospital.

Also, accepting Ms. Hill's argument would make the right to seize evidence, *i.e.*, blood tests, turn upon the severity of the injured person's injuries. *Schmerber*'s reasons for upholding the blood test did not mention the severity of the offense or the injuries of the victim. Ms. Hill's contention would require investigating officers to be medical experts in "sizing up" the injuries of the victim and making a determination as to whether they will survive or not before a blood test could be done on a defendant. We hold the taking of Ms. Hill's blood was reasonable and a warrant not required. *State v. Judge, supra* at 711–12.

Finally, Ms. Hill's argument there was insufficient evidence to establish beyond a reasonable doubt she was intoxicated is without merit. The blood test results show Ms. Hill had a .18 percent blood alcohol level over 3 hours after the accident. A toxicologist testified she had .23 percent at the time of the accident. Under RCW 46.61.502(1),

such a reading is sufficient to establish guilt of driving while under the influence of intoxicating liquor, and in turn guilt of vehicular assault under RCW 46.61.522(1)(b).

Affirmed.

THOMPSON, A.C.J., and MUNSON, J., concur.

Reconsideration denied July 30, 1987.

Review denied by Supreme Court December 2, 1987.