

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76206-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROBERT TERRANCE JACKSON, JR., | ) | |
| | ) | FILED: May 7, 2018 |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Following a crash that killed Robert Jackson's passenger, Jackson's blood was drawn to test for alcohol and drugs. Jackson's constitutional right to investigate his case does not require advisement about the right to independent blood testing under due process or equal protection.

There was significant media coverage following Jackson's arrest. Because Jackson does not show a probability of prejudice from pretrial publicity, the trial court did not abuse its discretion when it denied Jackson's motion for a change of venue from King County to Snohomish County.

The trial court determined Jackson was a persistent offender based on two prior convictions for "most serious offenses." The judgment and sentence for one of the prior convictions cites to the wrong statute. Because the charging documents from the prior conviction showed the State properly charged and

convicted Jackson under the correct statute, the trial court did not err in considering the prior judgment.

The trial court determined Jackson was a persistent offender. He asserts a jury should have decided the fact of prior convictions. Under the Persistent Offender Accountability Act,[1] a judge may find the fact of a prior conviction. We conclude the trial court did not violate Jackson's Sixth Amendment right to a jury trial.

Therefore, we affirm.

## FACTS

On November 12, 2015, Jackson was driving through a 25 mile per hour speed zone at a high rate of speed when he lost control of his vehicle. He crashed into a utility box. Jackson's passenger, Lindsay Hill, died after being ejected from the vehicle.

Jackson was transported to the hospital and his blood was drawn for testing. The test showed Jackson had alcohol and THC[2] in his blood. The State charged Jackson with vehicular homicide, felony hit and run, and unlawful imprisonment.

Before trial, Jackson moved for a change of venue to Snohomish County and to suppress the blood test results. The court denied both requests. Moving forward, Jackson chose to represent himself and waived his right to a jury. During

---

[1] RCW 9.94A.570.

[2] Tetrahydrocannabinol (marijuana).

2

trial, a forensic scientist testified that based on the level of alcohol in Jackson's blood at the time of the draw, his blood alcohol level was likely between .13 and .22 at the time of the crash.

Following a bench trial, the court found Jackson guilty of vehicular homicide and felony hit and run. Because he had two prior convictions for most serious offenses, the court found Jackson was a persistent offender and sentenced him to life imprisonment without parole.

Jackson appeals.

## ANALYSIS

### I. Blood Test

Jackson contends the trial court erred in denying his motion to suppress the results of his blood test. Jackson argues admission of the results violated his rights to due process and equal protection because the State did not advise him of the right to independent testing.

Prior to 2013, RCW 46.20.308 provided that "[a]ny person who operates a motor vehicle within this state is deemed to have given consent . . . to a test or tests of his or her breath or blood."[3] The statute required law enforcement officers to inform individuals subjected to breath or blood tests of their right to independent blood testing.[4] Following a United States Supreme Court decision, the Washington legislature removed any reference to blood from the informed consent

---

[3] Former RCW 46.20.308(1) (2012).
[4] Former RCW 46.20.308(2) (2012)

3

statute.[5] The statute in effect when Jackson was arrested in 2015 only required advisement of the right to independent testing for a breathalyzer.[6]

Jackson argues the due process right to collect evidence and present a defense includes the right to advisement of the right to independent blood testing. Although Jackson suggests case law is consistent with this argument, he cites exclusively to cases decided before the 2013 amendment.

Following the 2013 amendment, in State v. Sosa, Division Three of this court considered whether criminal defendants had a separate constitutional right to advisement about independent blood testing.[7] The court determined "[t]he fact that a defendant has a constitutional right to investigate his or her case and develop evidence does not provide an independent basis for requiring an advisement about independent blood testing. . . .There are no due process problems with eliminating this requirement."[8]

Jackson also argues he has a right under equal protection to advisement about independent blood testing. He contends he is similarly situated to individuals whose breath is tested and no rational basis supports different

---

[5] State v. Sosa, 198 Wn. App. 176, 181-82, 393 P.3d 796 (2017); see Missouri v. McNeely, 569 U.S. 141, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013) ("We hold that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.").

[6] Former RCW 46.20.308(1) (2013).

[7] 198 Wn. App. 176, 183, 393 P.3d 796 (2017).

[8] Id.

treatment. But he provides no authority applying equal protection in a similar situation. In Sosa, the court concluded, the defendant could not "show he is similarly situated to individuals whose breath is tested for alcohol concentration, as required for an equal protection challenge. Blood and breath testing are different for a variety of reasons. . . . These differences warrant different statutory treatment."[9] Even if blood samples degrade over time, as argued by Jackson, he had the opportunity to retest the blood sample soon after his arrest and appointment of counsel.

We follow Sosa and conclude there is no due process or equal protection right to advisement about independent blood testing. For this reason, the trial court did not err in denying Jackson's motion to suppress the blood test results.

## II. Change of Venue

Jackson argues the trial court abused its discretion in denying his request for a change of venue to Snohomish County.

A trial court's decision to deny a motion for a change of venue is reviewed for abuse of discretion.[10] We consider nine factors to determine whether the court abused its discretion:

> "(1) the inflammatory or noninflammatory nature of the publicity;
> (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of

---

[9] Id. at 184.
[10] State v. Jackson, 150 Wn.2d 251, 269, 76 P.3d 217 (2003).

prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn."[11]

"A motion for change of venue should be granted when necessary to effectuate a defendant's due process guaranty of a fair and impartial trial but a defendant must show a probability of unfairness or prejudice from pretrial publicity."[12]

Jackson was one of 3,200 individuals mistakenly released early due to a Department of Corrections error. Jackson should have been in custody when the crash occurred in November 2015. As a result, there was significant media coverage following Jackson's arrest.

Under the first factor, although Jackson's arrest did receive media attention, the publicity primarily focused on the error by Department of Corrections in releasing him early. Although the coverage emphasized the tragedy of Hill's death, Jackson's prior convictions, and his status as a "felon," the information was factual.

As to the second factor, in the days after the accident, the coverage was confined to local news outlets. Although most of the articles came out of King County, Jackson admits these reports received statewide coverage, which would

---

[11] Id. at 270 (quoting State v. Crudup, 11 Wn. App. 583, 587, 524 P.2d 479 (1974)).

[12] Hoffman, 116 Wn.2d 51, 71, 804 P.2d 577 (1991).

include Snohomish County. Over a month later, national and international news organizations published articles about the crash and Jackson's arrest.

Neither the first nor the second factor shows a probability of prejudice from pretrial publicity. At a minimum, Jackson fails to show, under either factor, that a change of venue to Snohomish County would have mitigated any alleged prejudice.

Similarly, the third factor does not support a change of venue because the coverage appears to be limited to the two months following the crash. There is no evidence in the record of specific incidents of continued publicity between December 2015 and the hearing on the motion for change of venue in February 2016. Additionally, the trial court acknowledged that Jackson could renew the motion if there was additional publicity between the hearing and trial. Jackson did not renew his motion, and he failed to present evidence of continued publicity between February 2016 and the bench trial in July 2016.

The fourth, fifth, and sixth factors relate to jury selection and are not relevant in this case because Jackson waived his right to a jury trial.

Under the seventh factor, both the governor and the Department of Corrections secretary publicly commented on Hill's death. The comments expressed regret over Jackson's early release. The record does not support Jackson's argument that the officials urged conviction or expressed an endorsement of the State's case against Jackson. Jackson does not establish a probability of prejudice under this factor.

As to the eighth factor, the State charged Jackson with vehicular homicide, felony hit and run, and unlawful imprisonment. The State concedes these are serious charges, but courts have denied motions for change of venue involving charges of similar severity.[13]

And finally, the ninth factor does not support a change of venue because King County has a large population from which a venire could have been drawn.

We conclude the trial court did not abuse its discretion when it denied Jackson's motion for a change of venue.

## III. Persistent Offender

Jackson argues he is not a persistent offender because his prior judgment for second degree assault is facially invalid. Jackson contends the trial court erred in denying his motion to exclude the prior judgment.

A "persistent offender" is an individual who has been convicted of any felony considered a "most serious offense" and has previously "been convicted . . . on at least two separate occasions . . . of felonies that under the laws of this state would be considered most serious offenses."[14] Under the Persistent Offender Accountability Act, "all adult offenders convicted of three 'most serious offenses' are sentenced to life in prison without the possibility of release."[15]

---

[13] See Jackson, 150 Wn.2d at 273 (first degree murder); Crudup, 11 Wn. App. at 559 (second degree murder); Hoffman, 116 Wn.2d at 73 (first degree aggravated murder and first degree assault).

[14] RCW 9.94A.030(38)(a)(i), (ii).

[15] State v. Witherspoon, 180 Wn.2d 875, 888, 329 P.3d 888 (2014).

"[A] prior conviction that is unconstitutionally invalid on its face may not be considered at sentencing."[16] A conviction is invalid on its face when it evidences infirmities of a constitutional magnitude "without further elaboration."[17] In the context of consideration of a prior conviction at sentencing for a subsequent crime, the court may consider statutory history and charging documents when determining validity of the prior judgment and sentence.[18]

Here, the trial court determined Jackson was a persistent offender based on two prior convictions for "most serious offenses," a 1998 conviction for second degree assault, and a 2011 conviction for second degree robbery. The judgment and sentence for the 1998 conviction improperly cites to repealed RCW 9A.36.020. At the time Jackson committed the offense, second degree assault was defined in RCW 9A.36.021.

During sentencing in the current case, the State presented the jury instructions and charging documents from the 1998 case to show that Jackson was properly charged and convicted under RCW 9A.36.021. In the context of consideration of a prior conviction at sentencing for a subsequent crime, no case has relied on jury instructions to determine the validity of the prior judgment and

---

[16] State v. Webb, 183 Wn. App. 242, 250, 333 P.3d 470 (2014).

[17] State v. Ammons, 105 Wn.2d 175, 188, 713 P.2d 719 (1986).

[18] Webb, 183 Wn. App. 250-51.

sentence.[19] Even without considering the jury instructions, the charging documents were sufficient to show Jackson's 1998 prior conviction was under RCW 9A.36.021.

We conclude the trial court did not err in denying Jackson's motion to exclude his prior judgment. The court properly sentenced Jackson as a persistent offender.

IV. Right to a Jury Trial

Jackson contends the court violated his Sixth Amendment right to a jury trial when it determined he was a persistent offender.

In Apprendi v. New Jersey, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increased the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[20] Consistent with Apprendi, our Supreme Court has "held that for the purposes of POAA, a judge may find the fact of a prior conviction by a preponderance of the evidence."[21]

Jackson does not present any compelling argument challenging this existing precedent. We conclude the court did not violate Jackson's Sixth Amendment right to a jury trial.

---

[19] We do not rely upon the dicta in cases cited by the State for the proposition that the court may also consider jury instructions when determining facial validity.

[20] 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[21] Witherspoon, 180 Wn.2d at 892.

## V.  Statement of Additional Grounds

In his statement of additional grounds, Jackson asks this court to reverse and dismiss his conviction for vehicular homicide.  Jackson appears to argue there was insufficient evidence that he was "under the influence of or affected by intoxicating liquor or any drug."[22]

"'The sufficiency of the evidence is a question of constitutional law that we review de novo.'"[23]  To determine whether there is sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[24]  "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[25]

RCW 46.61.520 provides:

(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:

(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or

(b) In a reckless manner; or

(c) With disregard for the safety of others.

---

[22] Former RCW 46.61.502(1)(c) (2011).

[23] State v. Hummel, 196 Wn. App. 329, 352, 383 P.3d 592 (2016) (quoting State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)).

[24] State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[25] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Here, Jackson's blood was drawn 10 hours after the accident. David Nguyen, a forensic scientist at the Washington State Patrol Toxicology Laboratory, testified that based on the level of alcohol in Jackson's blood at the time of the draw, his blood alcohol level was likely between .13 and .22 at the time of the crash.

Similarly, in State v. Hill, the State presented evidence that Hill had a .18 percent blood alcohol level over three hours after the accident, and a toxicologist testified that she had a .23 percent at the time of accident.[26] Division Three of this court held the blood test results and toxicologist's testimony was sufficient evidence that Hill was intoxicated.[27]

Viewed in the light most favorable to the State, the fact finder could reasonably infer from Nguyen's testimony and the blood test results that Jackson was under the influence of alcohol at the time of the crash. We conclude that the State presented sufficient evidence to support Jackson's vehicular homicide conviction.

Next, Jackson asks this court to reverse and dismiss his conviction for felony hit and run because he was physically incapable of complying with the statute.

Under RCW 46.52.020(1), "A driver of any vehicle involved in an accident resulting in the injury to or death of any person . . . shall immediately stop such

---

[26] 48 Wn. App. 344, 352, 739 P.2d 707 (1987).
[27] Id. at 352-53.

vehicle at the scene of such accident . . . and in every event remain at, the scene of such accident." Jackson was convicted under RCW 46.52.020(4), which provides that any driver failing to stop is guilty of felony hit and run. But RCW 46.52.020(4)(d) states, "This subsection shall not apply to any person injured or incapacitated by such accident to the extent of being physically incapable of complying with this section." Jackson has the burden of proving this statutory affirmative defense.[28]

Jackson elicited testimony from Dr. James Boehl, the treating emergency room doctor, that Jackson suffered a head injury as a result of the crash and that people "with head injuries . . . do and say things they normally would not do had they not suffered a severe blunt trauma to the head."[29] Malikai Hill, the victim's son, testified that shortly after the accident, Jackson looked like he had a concussion. Evidence that people with concussions may have difficulty functioning did not compel the trial court, in this bench trial, to find that Jackson's injuries rendered him physically incapable of staying at the scene of the accident.

---

[28] See State v. W.R., Jr., 181 Wn.2d 757, 762, 336 P.3d 1134 (2014) ("The legislature does not violate a defendant's due process rights when it allocates to the defendant the burden of proving an affirmative defense when the defense merely 'excuse[s] conduct that would otherwise be punishable.'") (alteration in original) (internal quotation marks omitted) (quoting Smith v. United States, 586 U.S. 106, 110, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013)).

[29] RP (July 14, 2016) at 168.

Stated another way, the possibility of a concussion and possibility of impairment do not establish Jackson was physically incapable of complying with the hit and run statute.

Therefore, we affirm.

WE CONCUR: