# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58497-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| GEORGE ROBERT LAINE, | |
| Appellant. | |

MAXA, J. – George Laine appeals his conviction of vehicular homicide by driving in a reckless manner. Laine was driving on a rural, two-lane road and he drove over the center line, colliding with an oncoming car. One of the passengers in the oncoming car, an 11-year-old boy, died. Two witnesses who were driving behind Laine observed him swerving into the opposite lane and onto the right shoulder numerous times for 10 to 15 minutes before the accident.

Laine argues that (1) the State presented insufficient evidence to convict him of vehicular homicide by driving in a reckless manner, and (2) the prosecutor engaged in misconduct during closing argument when he referred to the deceased boy's age when discussing recklessness and that the damage to the vehicles was evidence of recklessness.

We hold that (1) the State presented sufficient evidence to convict because viewing the evidence in a light most favorable to the State, a rational trier of fact could find that Laine was driving in a reckless manner; and (2) Laine's prosecutorial misconduct claims fail. Accordingly, we affirm Laine's conviction.

FACTS

*Background*

At the time of the accident, Laine was a 65-year-old resident of Astoria, Oregon. In December 2019, he was driving a pickup truck on Sandridge Road, a narrow two-lane road in rural Pacific County with a white, dashed center line dividing the two lanes. The road was fairly straight, with a few slight curves. Passing was allowed. It was dusk, and the road was wet.

As a Jeep approached from the opposite direction, Laine drove over the center line and collided with the Jeep, which went into a ditch. 11-year-old Gaven Lehotta was sitting in the back of the Jeep next to his sister, and his parents were in the driver and front passenger seat. Gaven died as a result of the injuries he sustained in the accident.

The State charged Laine with vehicular homicide by driving in a reckless manner and/or with disregard for the safely of others.

*Trial Testimony*

Jacob Caton was a passenger in a car that his mother, Amber Williams, was driving. They were driving behind Laine on Sandridge Road and witnessed the accident. Caton testified that he observed Laine's truck swerving in and out of its lane. He was behind the truck for at least five minutes and saw the truck swerve off the road at least 10 times. Caton stated that Laine was "constantly back over each side of the lines" and "went off the roadway once and almost struck a light pole and a fence." Rep. of Proc. (RP) at 119-20.

Caton recorded a short video of the truck on his cell phone "in case anything happened." RP at 116. The video was admitted into evidence and played for the jury at trial. The video showed a truck driving over the center line. The vehicle was almost completely in the opposite lane for almost four seconds before returning to the right lane. On the video, Williams stated,

2

"Dude, I have never seen someone drive like – ," and then the video ended. Ex. 1. However, Caton did not contact law enforcement because he did not "see it as that big of a problem at the time." RP at 117.

Caton testified that he eventually witnessed the truck crash into a Jeep that was heading south in the opposite lane. He observed the truck "go completely over the lane into the other lane completely, and the Jeep kind of flew in the air and they both went into the ditch." RP at 118.

Williams testified that the weather was wet because it had been raining the evening of the accident. When she was driving home with Caton, she saw Laine driving erratically. The truck was "going over the line on the right and the left, just some not normal driving," and the truck crossed over the middle divide going to the left. RP at 137. She saw the truck almost hit a mailbox on the right hand side and "fishtailing gravel on the left." RP at 139. Laine's truck had two wheels over the center line.

Williams stated that she was driving behind Laine for 10 to 15 minutes and saw him go back and forth over the line about six times. She repeatedly honked her horn and flashed her flashers, but did not see any response from Laine. Williams "knew something bad was going to happen by the way [Laine] was driving" and wanted to document it, so she asked Caton to record the driving on his cell phone. RP at 139. Williams later saw the truck go over the center line and collide with a Jeep, which went down into a ditch. She stated that Laine's truck "smashed head on into the Jeep." RP at 140.

Randy Wiegardt, the chief criminal deputy for Pacific County Sheriff's Office, was dispatched to the accident. He testified that during his interaction with Laine immediately after the accident, he did not smell any alcohol or marijuana and there was no other indication that Laine

was impaired. Wiegardt administered a breath test and the result was zero, showing that Laine had not consumed any alcohol.

Wiegardt stated that he could not tell how fast either vehicle was going. But there was no evidence presented at trial that Laine was speeding. And Wiegardt obtained Laine's phone records, which showed that Laine had not been sending or receiving any messages or phone calls at the time of the accident.

Wiegardt testified that Laine told him that he was going through a divorce and that he had "been out of it." RP at 177. Laine also said that he believed the accident happened because he had not slept well in several weeks and was suffering from anxiety.

Wiegardt acknowledged on cross-examination that some weaving is normal. He agreed that weather conditions can impact the visibility of lines on the road.

The trial court admitted without objection exhibits showing photographs of damage to the two vehicles and photographs of the deceased boy.

Laine made a mid-trial motion to dismiss the charge of vehicular homicide by driving in a reckless manner based on insufficiency of the evidence. The trial court denied the motion. The court stated, "The fact that that was driving that was not a single incident, that it was multiple incidents that were witnessed that happened over a length of time, I think all goes into the calculation as to whether or not it's a heedless manner or reckless." RP at 381.

Laine then testified that on the day of the accident, he was on his way home from a doctor's appointment. He had gone to the doctor because he and his wife were temporarily separated and he was concerned because he was feeling anxious and had chest pains. The doctor told Laine that he was suffering from anxiety and prescribed him medication. But the doctor had said that everything was fine and he did not prohibit Laine from driving.

Laine picked up his prescription but had not taken any yet. He stated that he did not have any alcohol or any non-prescribed medications or drugs. He was driving down Sandridge Road at dusk, it was rainy, and visibility was not great. The speed limit was 45 miles per hour and Laine usually set his cruise control at 45 miles per hour if there was no other traffic. In addition, Laine's truck had new tires that were less than a month old, and he was unaware of any mechanical issues with his truck.

Laine stated that there was a car driving in front of him and just before the accident he thought he saw something move on the right side of his truck. He did not know if he had veered to the left, but he turned his head to the right to look at whatever he thought he saw and when he turned his head back there was a huge crash.

*Closing Argument*

During closing argument, the prosecutor stated,

You get the photographs of the collision. That's not just mere negligence with how much damage, right? So look at Mr. Laine's truck. If this would have been a scenario where a simple serve out of the way, swerve back into your lane, you wouldn't have such a head-on collision. All testimony is uncontroverted that it's Mr. Laine's car that went in to [the Jeep], into [the Jeep's] lane. Zero evidence even remotely suggests otherwise. Even [Laine's] own statements at the time of the event, when his memory was fresh, when he was going to be cooperative. *So that shows how reckless he is just from the sheer damage of the vehicles.*

And *I keep hammering home the reckless driving because we know we have the evidence of who passed away. An 11-year-old boy* sitting in the passenger seat of his dad -- on his dad's side. His dad got the second most largest [sic] injuries on that side, the driver's side of the vehicle. We know it was caused from collision. We've heard all the medical testimony. [The boy] was dead upon -- quite close to after the impact of that vehicle.

RP at 439-40 (emphasis added). Laine did not object to any of these statements.

During his closing argument, Laine's attorney stated that Laine "has to live with the fact that people were saying that he took the life of an 11-year-old boy." RP at 453.

No. 58497-2-II

*Verdict*

The jury found Laine guilty of vehicular homicide and in a special verdict form found that he was both driving in a reckless manner and driving with disregard for the safety of others. Laine appeals his conviction of vehicular homicide by driving in a reckless manner.

ANALYSIS

A.    SUFFICIENCY OF EVIDENCE

Laine argues that the State presented insufficient evidence to convict him of vehicular homicide by driving in a reckless manner. We disagree.

1.    Standard of Review

The test for determining the sufficiency of evidence is whether any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). We resolve all reasonable inferences based on the evidence in favor of the State and interpret inferences most strongly against the defendant. *Id.* Circumstantial and direct evidence are equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

2.    Legal Principles

RCW 46.61.520 states,

(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:
. . . .

(b) In a reckless manner; or

(c) With disregard for the safety of others.

As noted above, the State charged Laine under both subsection (b) and (c).

6

Driving in a reckless manner for purposes of RCW 46.61.520(1)(b) means, "to operate a vehicle in a rash or heedless manner, indifferent to the consequences." *State v. Roggenkamp*, 153 Wn.2d 614, 631, 106 P.3d 196 (2005) (internal quotations omitted).[1] And driving with disregard for the safety of others "is an aggravated kind of negligence 'falling short of recklessness but constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term "negligence." ' " *State v. Lopez*, 93 Wn. App. 619, 623, 970 P.2d 765 (1999) (quoting *State v. Eike*, 72 Wn.2d 760, 765-66, 435 P.2d 680 (1967)).

Laine emphasizes that there is a significant difference between the standard range sentence for vehicular homicide by driving in a reckless manner and vehicular homicide by driving with disregard for the safety of others. Driving in a reckless manner has a seriousness level of XI, RCW 9.94A.515, with a standard range sentence for a defendant with no criminal history of 78 to 102 months. RCW 9.94A.510. Driving with disregard for the safety of others has a seriousness level of VII, RCW 9.94A.515, with a standard range sentence for a defendant with no criminal history of 15 to 20 months. RCW 9.94A.510.

3. Relevant Cases

Laine asserts that the Washington cases affirming vehicular homicide convictions based on driving in a reckless manner all involved something more than repeatedly driving across the center line. He cites several cases as examples. *See State v. Hill*, 48 Wn. App. 344, 345, 739 P.2d 707 (1987) (defendant drove north in southbound lanes on Interstate 82 and collided with an oncoming car); *State v. Hanna*, 123 Wn.2d 704, 706-07, 871 P.2d 135 (1994) (defendant

---

[1] The Supreme Court in *Roggenkamp* expressly held that the definition of "in a reckless manner" is different than the definition of "reckless driving" in RCW 46.61.500(1). 153 Wn.2d at 618, 630.

7

travelled 80 to 100 miles per hour and was racing or chasing another car when he crossed a grass median into opposing traffic and collided with an oncoming car); *State v. Kenyon*, 123 Wn.2d 720, 722, 871 P.2d 144 (1994) (defendant drove over the speed limit with three different sized tires and swerved all over the road before colliding with another vehicle); *State v. Randhawa*, 133 Wn.2d 67, 70-72, 941 P.2d 661 (1997) (defendant had been drinking alcoholic beverages and was exceeding the speed limit when he lost control as he was negotiating a curve).

He also cites to *Lopez*, 93 Wn. App. 619. In *Lopez*, the defendant was 14 years old and drove a car with three friends. 93 Wn. App. at 621. The defendant was driving between 51 and 54 miles per hour on a road with a speed limit of 50 miles per hour. *Id.* The car left the lane and the defendant overcorrected, causing the car to roll and killing one of the passengers. *Id.* There was no evidence of substance abuse, horseplay, or other reckless conduct leading to the accident. *Id.*

The State charged the defendant with vehicular homicide by driving in a reckless manner and/or with disregard for the safety of others. *Id.* at 621-22. The trial court ruled that the State failed to establish recklessness or disregard for safety and dismissed the case. *Id.* at 622. On appeal, the court held that being a minor and an unlicensed driver was not enough to establish a disregard for the safety of others and affirmed the trial court's dismissal of the case. *Id.* at 623-24.

Laine notes that no Washington case holds that weaving into the oncoming lane several times, in the absence of any other unlawful driving, constitutes driving in a reckless manner.

4.  Analysis

Here, there was no indication that Laine engaged in conduct "typical" of driving in a reckless manner. There was no evidence that he was impaired by alcohol or drugs. He was not

8

speeding. He did not disregard traffic signals. He was not racing or chasing another vehicle. He was not engaged in horseplay. He was not texting or on his phone.

But both Caton and Williams witnessed Laine driving erratically for a lengthy period. They saw him swerve out of his lane between six and 10 times in the span of five to 15 minutes. He went over the center line into the opposite lane and over the fog line on the right, almost hitting a light pole or a mailbox. Caton's cell phone video showed Laine's truck do more than just drift slightly out of its lane; Laine was driving over the center line and was almost entirely in the opposite lane for almost four seconds. Williams was so alarmed by Laine's driving that she repeatedly honked her horn and flashed her lights, but Laine apparently did not notice.

Laine urges this court to hold as a matter of law that this type of erratic driving cannot constitute driving in a reckless manner. He concedes a jury could find that he drove with disregard for the safety of others – "an aggravated kind of negligence." *Lopez*, 93 Wn. App. at 623. But he argues that driving in a reckless manner requires significantly greater proof than ordinary negligence. He claims that the legislature recognized this higher level of proof because the punishment for vehicular homicide by driving in a reckless manner is five times greater than the punishment for driving with disregard for the safety of others. *See* RCW 9.94A.510, .515.

Laine argues that deviating from his lane six to 10 times over a period of five to 15 minutes while not driving unlawfully in any other way is not driving in a "rash or heedless manner, indifferent to the consequences." *Roggenkamp*, 153 Wn.2d at 631. Instead, he claims that he merely was inattentive, inadvertently letting his mind wander while driving down a familiar road. Laine contends that inattentiveness without evidence of other unlawful driving may be sufficient to show gross negligence, but it is not sufficient to establish driving in a reckless manner.

9

The State emphasizes that the collision was not an isolated event, but was the consequence of Laine's inability to control his truck over a 10 to 15 minute period. The State notes that the video showed that Laine drove in the oncoming lane for several seconds rather than quickly recovering. The State argues that Laine was aware that he could not keep his truck in his lane because he was having a mental health crisis, and it was rash and heedless and indifferent to the consequences for him to keep driving rather than pulling over.

There are no Washington cases that are directly comparable to the facts in this case. Laine relies on *Lopez*, but the accident in that case was caused by the one and only time the defendant left her lane. 93 Wn. App. at 621. Laine left his lane numerous times throughout the five to 15 minutes leading up to the accident.

The question for this court is whether any rational trier of fact could find beyond a reasonable doubt that Laine was driving in a reckless manner, viewing the evidence and all reasonable inferences in the light most favorable to the State. *Scanlan*, 193 Wn.2d at 770. We conclude that under these facts, a rational jury could find that the inability to stay in the correct lane for an extended period of time, including driving completely in the oncoming lane for almost four seconds, constituted driving in a "rash or heedless manner, indifferent to the consequences." *Roggenkamp*, 153 Wn.2d at 631.

Therefore, we hold that the evidence was sufficient to establish that Laine was driving in a reckless manner.

B.      PROSECUTORIAL MISCONDUCT

Laine argues that the prosecutor engaged in misconduct during closing argument by improperly inflaming the jury's passions and arguing facts outside the record. We conclude that Laine's claims fail.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of all the circumstances of the trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). Our analysis considers "the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). To show prejudice, the defendant is required to show a substantial likelihood that the misconduct affected the jury verdict. *Id.*

However, when the defendant fails to object at trial, a heightened standard of review requires the defendant to show that the conduct was " 'so flagrant and ill intentioned that [a jury] instruction would not have cured the [resulting] prejudice.' " *Zamora*, 199 Wn.2d at 709 (alteration in original) (quoting *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020)). "In other words, the defendant who did not object must show the improper conduct resulted in *incurable* prejudice." *Zamora*, 199 Wn.2d at 709. If a defendant fails to make this showing, the prosecutorial misconduct claim is waived. *Slater*, 197 Wn.2d at 681.

Courts have found flagrant and ill-intentioned conduct in a "narrow set of cases," including "where the prosecutor otherwise comments on the evidence in an inflammatory manner." *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 170, 410 P.3d 1142 (2018). And it is less likely that improper statements will cause incurable prejudice when they do not have an inflammatory effect. *See State v. Emery*, 174 Wn.2d 741, 762-63, 278 P.3d 653 (2012). The defendant "must show that the prejudice was so inflammatory that it could not have been defused by an instruction." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

2.    Reference to the Deceased Boy's Age

Laine argues that the prosecutor improperly inflamed the jury's passions by referring to the Gaven's age when arguing that Laine's driving was reckless. We disagree.

A prosecutor cannot use arguments to inflame the jury's passions or prejudices. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). "A prosecutor commits misconduct by asking jurors to convict based on their emotions rather than the evidence." *State v. Lucas-Vicente*, 22 Wn. App. 2d 212, 224, 510 P.3d 1006 (2022). However, the prosecutor has wide latitude to assert reasonable inferences from the evidence. *Id.*

Here, during closing argument, the prosecutor stated, "And I keep hammering home the reckless driving because we know we have the evidence of who passed away. An 11-year-old boy sitting in the passenger seat." RP at 440. Laine claims that the prosecutor essentially was arguing that that the decedent's young age made Laine's conduct reckless.

But this comment was brief – the prosecutor only mentioned Gaven's age once – and it referred to an undisputed fact. There was testimony that Gaven was 11 years old at the time of the accident. And the jury already knew that Gaven was a young boy based on the testimony of several witnesses and because photographs of the boy were admitted and shown to the jury at trial, without objection from Laine. In fact, Laine himself mentioned Gaven's age during his closing argument.

Laine relies on *State v. Clark*, 143 Wn.2d 731, 24 P.3d 1006 (2001) to argue that referring to the victim's age is inherently prejudicial. In *Clark*, the court stated that evidence that a crime victim was four years old was prejudicial and that the jury could not possibly have disregarded that evidence. *Id.* at 783. But the evidence related to the victim in a prior kidnapping conviction, and the victim's age was admitted in the death penalty phase after the

12

defendant had been convicted of kidnapping and murdering a seven-year-old girl. *Id.* at 738, 777. This case does not involve similar facts.

We conclude that the prosecutor's statement did not improperly inflame the jury's passions.[2] Therefore, we hold that Laine's challenge to the prosecutor's comment about Gaven's age fails.

3. Evidence Outside the Record

Laine argues that the prosecutor improperly argued evidence outside the record by stating that the damage to the vehicles was evidence of recklessness. We conclude that the argument was not improper.

It is error for a prosecutor to mislead the jury by misstating the evidence presented at trial. *State v. Meza*, 26 Wn. App. 2d 604, 620, 529 P.3d 398 (2023). And a prosecutor commits misconduct by encouraging the jury to consider evidence that is outside of the record. *State v. Teas*, 10 Wn. App. 2d 111, 128, 447 P.3d 606 (2019). However, a prosecutor has wide latitude to assert reasonable inferences from the evidence. *Meza*, 26 Wn. App. 2d at 620.

Here, during closing argument, the prosecutor stated,

> You get the photographs of the collision. That's not just mere negligence with how much damage, right? So look at Mr. Laine's truck. If this would have been a scenario where a simple serve out of the way, swerve back into your lane, you wouldn't have such a head-on collision. . . . So that shows how reckless he is just from the sheer damage of the vehicles.

RP at 439-40. Laine argues that there was no evidence regarding reconstruction of the accident or expert testimony that would support this argument.

---

[2] Even if the prosecutor's reference to Gaven's age during closing argument had been improper, Laine waived this claim by not objecting to the remark. If Laine had objected, the trial court could have stricken the comment and asked the jury to disregard it. The comment was not so inflammatory that it could not be "defused by an instruction." *Dhaliwal*, 150 Wn.2d at 578.

However, there was testimony from Williams that Laine "smashed head on" into the Jeep. RP at 140. Caton testified that Laine went "into the other lane completely." RP at 118. And the photographs admitted as exhibits showed extensive damage to both vehicles. From this evidence, the prosecutor argued that Laine was reckless because the damage to the vehicles – as well as the testimony – showed that Laine was completely in the oncoming lane rather than merely swerving in and out of that lane. The prosecutor did not need expert testimony to comment on the damage that was obvious from the photographs.

We conclude that this argument was not improper.[3] Therefore, we hold that Laine's challenge to the prosecutor's comment about damage to the vehicles fails.

4.     Cumulative Misconduct

Laine briefly argues that the cumulative effect of the prosecutor's improper conduct affected the jury's verdict. We disagree.

Under the cumulative error doctrine, the defendant must show that the combined effect of multiple errors requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). The cumulative effect of repeated prosecutorial conduct may be so flagrant that no instruction can erase the combined prejudicial effect. *Glasmann*, 175 Wn.2d at 707.

Here, Laine cannot show that the challenged comments were improper or that they resulted in prejudice. Accordingly, we hold that Laine's claim of cumulative error fails.

CONCLUSION

We affirm Laine's conviction of vehicular homicide by driving in a reckless manner.

---

[3] Even if the argument was improper, Laine did not object to these statements. And he cannot show that the statements were flagrant and ill-intentioned or that a jury instruction could not have cured any prejudice.

No. 58497-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

VELJACIC, J.

15